**Linus W. BOWMAN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–391L.**

United States Court of Federal Claims.

April 25, 1996.

Linus W. Bowman, pro se, Big Spring, Texas.

Kathie A. Whipple, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## OPINION

MEROW, Judge.

## I. INTRODUCTION

This matter involves an interplay between two different clauses of the Fifth Amend- ment of the Constitution and presents a nov- el issue in Court of Federal Claims jurispru- dence. Plaintiff, Linus W. Bowman, asserts that the Government violated the Double Jeopardy Clause by executing civil forfei- tures of his property subsequent to criminal convictions.[1] Plaintiff further alleges that he is entitled to relief pursuant to the Takings Clause[2] for the deprivation of his property caused by the forfeitures.

Defendant moved to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to RCFC 12(b)(1) and (4), respectively. Subsequently, Plaintiff ten- dered a summary judgment motion for filing. Defendant then moved to stay any summary judgment proceedings pending the resolution of its motion to dismiss. For the reasons set forth below, Defendant's motion to dismiss is granted, Defendant's motion for a stay is denied, and Plaintiff's motion for summary judgment shall be filed by leave of court and denied.

## II. FACTUAL BACKGROUND

On April 23, 1987 the United States initi- ated three *in rem* forfeiture proceedings un- der the Controlled Substances Act, § 21 U.S.C. § 881, in the United States District Court for the District of Idaho ("District Court" or "Idaho District Court") against Plaintiff's real property and aircraft. The Government alleged that the property was acquired with proceeds traceable to the ex- change of controlled substances and/or used or intended to be used to facilitate violations of the Controlled Substances Act from 1978 through 1987 and was therefore forfeitable under 21 U.S.C. § 881(a)(6). ("[A]ll moneys ... furnished by a person in exchange for a controlled substance in violation of this sub- chapter, all proceeds traceable to such an exchange, and all moneys ... used or intend- ed to be used to facilitate any violation of this subchapter....."). The actions were captioned as follows: *United States v. One Parcel of Real Property,* Civil No. 87–4056,

---

**1.** The Double Jeopardy Clause provides: "... nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb, ..." U.S. Const. amend. V.

**2.** The Takings Clause provides: "... nor shall private property be taken for public use without just compensation." U.S. Const. amend. V.

*United States v. One Beechcraft Duke, Twin Engine Airplane,* Serial No. 6010S, Civil No. 87–4047, and *United States v. One 1948 Piper 12, Single Engine Airplane,* Serial No. N3773M, Civil No. 87–4058. Pursuant to warrants executed by the District Court, Drug Enforcement Administration agents seized Plaintiff's property the day after the forfeiture actions were filed.

Prior to adjudication of these forfeiture actions, Plaintiff was indicted and convicted on criminal charges. On February 11, 1988 Plaintiff was indicted for violations of 18 U.S.C. § 2 (cocaine distribution), 21 U.S.C. §§ 841 (cocaine possession), 846 (distribution of cocaine and methamphetamine) 848 (continuing criminal enterprise), and 26 U.S.C. § 7206(1) (tax fraud). On July 26, 1988, Plaintiff pled guilty to operating a continuing criminal enterprise involving the importation and distribution of cocaine and marijuana in violation of 21 U.S.C. §§ 841 and 846 as well as tax fraud in violation of 26 U.S.C. § 7206(1). On January 18, 1989 the District Court entered judgment and sentenced Defendant to sixteen years in prison. *See* Compl.Exh. K (criminal judgment).

Subsequent to entry of the criminal judgment, the Government moved for summary judgment in the civil forfeiture proceedings. On June 5, 1990 the District Court granted the Government's motions. The court entered decrees of forfeiture pursuant to 21 U.S.C. § 881(a)(6) on June 18, 1990.[3]

Defendant appealed the forfeiture judgments. On April 20, 1992, the United States Court of Appeals for the Ninth Circuit affirmed the District Court's determinations.

Prior to the final disposition of the forfeiture proceedings the Government sold all of the forfeited property. On October 7, 1987 the District Court granted a motion to sell the aircraft. On March 29, 1988 the court granted a motion to lease the forfeited real property and put the proceeds in escrow. Finally, on December 28, 1989, the District Court entered an order permitting the interlocutory sale of the real property and mandating that the proceeds be substituted for the *res* in the *in rem* forfeiture proceedings.

Plaintiff filed the instant action *pro se* on June 7, 1995. On October 12, 1995 Defendant moved to dismiss. Five months later, on March 8, 1996, Plaintiff submitted a motion for summary judgment which has not, as yet, been filed as it is not in the format required by the Rules. Defendant subsequently moved that any proceedings on Plaintiff's summary judgment motion be stayed pending resolution of its dismissal motion.

### III. CONTENTIONS OF THE PARTIES

Plaintiff asserts that the Takings Clause entitles him to compensation for the deprivation of his property effected by the forfeitures. He maintains that the civil forfeitures of his property were conducted in violation of the Fifth Amendment because they subjected him to double jeopardy for the criminal offenses,[4] citing to *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989), *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) and *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994), *op. amended and reh'g denied* 56 F.3d 41, *cert. granted sub nom. United States v. Ursery et al.,* —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996). Consequently, he argues that the forfeitures are void and the monetary value of his property must be returned. Plaintiff seeks a judgment for the value of the forfeited property, lost interim rents and prejudgment interest. Compl. at 28–29.

In its motion to dismiss,[5] Defendant asserts that this Court lacks subject matter jurisdiction over Plaintiff's claim and, alternatively, that Plaintiff has failed to state a claim. Defendant contends that subject matter jurisdiction is lacking for three reasons.

---

**3.** Attached to Plaintiff's Complaint were the civil forfeiture complaints, which alleged that the property at issue was forfeitable under 21 U.S.C. § 881(a)(6), as well as a docket sheet indicating the entry of judgment. The actual summary judgment order was not included.

**4.** Plaintiff initially asserted due process violations with respect to the forfeitures as well, but withdrew them in his response to the motion to dismiss.

**5.** Defendant has submitted to Plaintiff's factual allegations for purposes of its motion to dismiss.

First, Defendant asserts that the Court is not empowered to collaterally review determinations of a federal district court. Second, Defendant argues that the Double Jeopardy Clause is not "self-executing," indicating that it does not contain a provision for compensation upon its violation. Third, Defendant states that Plaintiff's allegations that the District Court's forfeiture determination was void cause the present action to sound in tort, placing his claim outside this Court's jurisdiction.

Defendant further alleges that Plaintiff fails to state a taking claim. Defendant maintains that Plaintiff's allegations that the forfeiture was void are inconsistent with one required element of a takings claim—that the act which resulted in the alleged taking was authorized. In addition, Defendant asserts that *in rem* forfeiture is an exercise of the Government's police power, and therefore, cannot constitute a compensable taking.

## IV. DISCUSSION

■ In considering a motion to dismiss, the unchallenged allegations of the complaint are construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Moreover, as Plaintiff in this case is *pro se,* his submissions are construed more leniently than pleadings drafted by lawyers. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977).

### A. Jurisdiction

This Court's relevant jurisdiction is expressly limited to those causes of action covered by the Tucker Act. The Act provides the Court with jurisdiction "... to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department...." 28 U.S.C. § 1491(a)(1).

■ The Tucker Act confers jurisdiction upon the Court of Federal Claims only in cases where a substantive right to recovery exists. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Absent the existence of a contractual relationship, to establish a right to recovery, a plaintiff must demonstrate that it either (1) seeks a refund of money which it paid to the Government, or (2) that the provision of the Constitution, the statute, the Executive Order, or the regulation upon which plaintiff relies mandates a payment of money which the Government has unlawfully declined to pay. *E.g., Testan,* 424 U.S. at 400, 96 S.Ct. at 954 (1976) (citing *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1007–09, 178 Ct.Cl. 599, 605–07 (1967)). The Tucker Act constitutes a waiver of sovereign immunity. *Testan,* 424 U.S. at 399, 96 S.Ct. at 954 (citing *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969)). *Id.* Therefore, it must be strictly construed.

### B. Illegal Exaction Claim

■ As Plaintiff seeks the return of the monetary value of his forfeited property, asserting that it was taken in violation of the Double Jeopardy Clause, his claim may qualify as one of illegal exaction under the Tucker Act. Failing to acknowledge the illegal exaction component of Tucker Act jurisdiction, Defendant asserts that jurisdiction cannot be had due to the lack of compensation mandating language in the Double Jeopardy Clause.

■ Illegal exaction jurisdiction will lie in cases where a "plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum" that "was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Eastport,* 178 Ct.Cl. at 605, 372 F.2d at 1007–08 (interpreting the breadth of Tucker Act jurisdiction), *cited in Testan,* 424 U.S. at 400, 96 S.Ct. at 954; *Doherty v. United States,* 500 F.2d 540, 205 Ct.Cl. 34 (1974) (Court of Claims asserted jurisdiction in case involving claim that application of forfeiture statute with alleged constitutional infirmities including equal protection violation rendered a taking); *see also Mallow v. United States,* 161 Ct.Cl. 446, 450, 453, 1963 WL 8503 (1963) (fine assessed pursuant to unconstitutional court-martial was an illegal exaction on two bases: (1) court-martial entered judgment for the fine pursuant to the Articles of War—

federal legislation which did not provide for its exaction, and (2) the exaction was conducted in violation of the Constitution's due process clause), *cited in Aerolineas v. United States,* 77 F.3d 1564, 1576–77. (Fed.Cir. 1996) In illegal exaction cases, in contrast to other actions for money damages, jurisdiction exists even when the provision allegedly violated does not contain compensation mandating language.[6] *Eastport,* 372 F.2d at 1007–08, 178 Ct.Cl. at 605; *but see Lark v. United States,* 17 Cl.Ct. 567, 569–70 (1989) (rejecting existence of illegal exaction jurisdiction).

Plaintiff alleges that the Government forfeited his two aircraft and real property in violation of the Constitution's Double Jeopardy Clause. As such, he alleges the two requisite elements of an illegal exaction: (1) that money was taken by the Government and (2) that a provision of the Constitution was violated in doing so. Although property and not actual funds were taken, as stated in *Eastport,* illegal exaction jurisdiction will arise when a claimant has "paid money over to the Government, directly or in effect." *See Eastport,* 372 F.2d at 1007–08, 178 Ct.Cl. at 605 (emphasis added), *cited in Aerolineas,* 77 F.3d at 1572–73 (jurisdiction over airlines' actions for refund of money paid to house illegal aliens as per previously repealed immigration statute). The United States Court of Appeals for the Federal Circuit recently demonstrated the continued vitality of the "directly or in effect" language in *Eastport,* by holding that illegal exaction jurisdiction would encompass a claim for a refund of money the Government required an airline to pay to a third, non-governmental party. *See Aerolineas,* 77 F.3d at 1575–77 (Government held to have received payment, in effect).

Although the Government actually took property from Plaintiff, it proceeded to sell this property and received money in return. Hence, in effect, the Government exacted money from Plaintiff. Considering *Aerolineas'* broad interpretation of *Eastport,* cases such as the instant one—where the Government exacts property which it later sells and for which it receives money—must necessarily qualify for consideration under the established illegal exaction jurisdiction. *See Id.*

Were an illegal exaction to be found, Plaintiff could receive the value of his forfeited property.[7] It is unclear whether he could recover the value of lost rents or depreciation. *See United States v. One 1979 Cadillac Coupe De Ville,* 833 F.2d 994, 998–99 (Fed. Cir.1987) (Federal Circuit denies return of depreciation value in claim asserted under 28 U.S.C. § 2465); *but see United States v. $277,000 United States Currency and One 1986 Dodge Ram Charger, Jalisco. Mexico, Lic. # HWY 773,* 69 F.3d 1491 (9th Cir.1995) (Government must disgorge interest and profits acquired which are considered part of the res for purposes of application of 28 U.S.C. § 2465). However, Plaintiff could not recover the pre-judgment interest he requests. *See Library of Congress v. Shaw,* 478 U.S. 310, 317, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986).

Nonetheless, despite the existence of the elements of an illegal exaction claim over which this Court may assert jurisdiction, it is not possible to assert jurisdiction at present given the existence of the civil forfeiture judgments of the Idaho District Court. While these final judgments are extant, the exactions cannot be ruled illegal. No jurisdiction exists enabling the United States

---

6. In light of this established component of the Court's jurisdiction, Defendant's assertion based on *Noel v. United States,* 16 Cl.Ct. 166, 170 (1989) that allegations of improper Government action cause the matter to sound in tort is similarly unfounded. *See Aerolineas,* 77 F.3d at 1571 (citing *Clapp v. United States,* 127 Ct.Cl. 505, 117 F.Supp. 576, 581 (1954), *cert. denied* 348 U.S. 834, 75 S.Ct. 55, 99 L.Ed. 658 (1954) (declining to consider the wrongful exaction of money under the Shipping Act a tort)).

7. Moreover, sums deposited from improperly forfeited property may be returned pursuant to the

general appropriation in 31 U.S.C. § 1322(b)(2) (1988), which provides,

"(b) ... necessary amounts are appropriated to the Secretary of the Treasury to make payments from—
"the United States Government account *"Refund of Moneys Erroneously Received and Covered"* and other collections erroneously deposited that are not properly chargeable to another appropriation." 31 U.S.C. § 1322(b)(2) (1988) (emphasis added).

*See Republic Nat'l Bank of Miami v. United States,* 506 U.S. 80, 90–93, 113 S.Ct. 554, 560–62, 121 L.Ed.2d 474 (1992).

Court of Federal Claims to overturn these district court determinations.

The Court of Federal Claims may review the determinations of other tribunals under limited circumstances, where such jurisdiction is provided by statute. *See e.g.,* 41 U.S.C. § 321 (jurisdiction for appellate review of Government contract decisions under Wunderlich Act), 42 U.S.C. § 300aa–12(e)(2) (review of Special Master's Vaccine Act decisions). There is no statutory provision extending this Court's jurisdiction generally to encompass the review of substantive actions taken by other federal courts.[8] *Florida Rock Indus., Inc. v. United States,* 791 F.2d 893, 899 (Fed.Cir.1986) *cert. denied* 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987); *see also Carney v. United States,* 462 F.2d 1142, 1144, 199 Ct.Cl. 160, 162–64 (1972), *cited in Meincke v. United States,* 14 Cl.Ct. 383, 386 (1988). Further, this Court does not possess the jurisdiction to review an equitable action for relief. *Carney,* 462 F.2d at 1144–45, 199 Ct.Cl. at 162–64.

The sole established exception to the prohibition on collateral review in the absence of an express statutory provision for such Court of Federal Claims jurisdiction arises in the context of court-martial proceedings. The Court may conduct collateral review of court-martial determinations when the core claim falls within the bounds of traditional Tucker Act jurisdiction and the court-martial is alleged to have committed error of constitutional magnitude. *See e.g., Matias v. United States,* 923 F.2d 821, 823 (Fed.Cir.1990) (jurisdiction over action to void court-martial and receive back pay for wrongful discharge); *see also Mallow,* 161 Ct.Cl. at 450, 454 (Court of Claims possesses Tucker Act jurisdiction to determine that court-martial judgments are void for lack of jurisdiction and direct return of court-imposed monetary fines—not necessary to obtain reversal of prior judgment).

Constitutional error will be present when "... the barriers and safeguards are so relaxed or forgotten, * * * that the proceeding is more a spectacle or trial by ordeal than a disciplined contest." *United States v. Augenblick,* 393 U.S. 348, 356, 89 S.Ct. 528, 534, 21 L.Ed.2d 537 (1969). This exception provides no assistance to Plaintiff.

Therefore, as reversal of the forfeitures is a precondition to establishing an illegal exaction, and no jurisdiction exists to effect this reversal, no relief can be provided to Plaintiff in the present circumstances.

Additionally, efforts by Plaintiff to reverse the forfeiture judgments on double jeopardy grounds in an appropriate tribunal would likely meet little success. First, Plaintiff relies upon *Halper,* 490 U.S. 435, 109 S.Ct. 1892, which held that the imposition of civil fines subsequent to criminal conviction which are in excess of the amount necessary to provide restitution to the Government will violate the Double Jeopardy Clause. *Halper* was decided in 1989, prior to final judgment in Plaintiff's forfeiture cases and therefore cannot be a basis for a reopening of his forfeiture cases based on a change in the applicable law. As Plaintiff provides no indication that he asserted a double jeopardy claim based on the issuance of *Halper* before the District Court or the Court of Appeals, he apparently waived any such argument.

Plaintiff also cites to authority issued subsequent to the entry of final judgment in his forfeiture cases supporting the narrower proposition that civil forfeitures effected subsequent to criminal conviction amount to a second punishment in violation of the Double Jeopardy Clause. *See $405,089.23 U.S. Currency,* 33 F.3d 1210 (21 U.S.C. § 881(a)(6) not solely remedial, thus forfeiture subsequent to criminal conviction will constitute second punishment violating Double Jeopardy Clause)[9]; *see also United States v. Ur-*

---

8. This case is distinguishable from *Shelden v. United States,* 7 F.3d 1022 (Fed.Cir.1993) where a court's judgment of *in personam* forfeiture of certain real property was held to result in a taking of plaintiff's mortgage lien. In *Shelden,* no collateral review of the district court's determination was necessary to proceed to a takings analysis because the district court had not made a determination forfeiting the security interest

alleged to have been taken. *Id.* The Federal Circuit accepted the district court forfeiture as a given. *Id.* In the case at bar, the forfeiture judgment relates to the very same interest alleged to have been taken.

9. In the instant case, unlike in *$405,089.23 U.S. Currency,* the civil forfeiture complaint was filed prior to the criminal indictment. However, so

*sery,* 59 F.3d 568 (6th Cir.1995) *cert. granted* —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996) (forfeiture pursuant to 21 U.S.C. § 881(a)(4), (7) is punishment for purposes of Double Jeopardy Clause). These rulings will not likely support the relief Plaintiff seeks because any ensuing precedent may not be applied retroactively after the issuance of final judgment. *See James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 543–45, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481, (White, J., concurring) (new federal constitutional law is applied retroactively to civil cases which are not yet final at the time of decision), *cited in Harper v. Virginia Department of Taxation,* 509 U.S. 86, 95–97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993).

Moreover, an FRCP 60(b)(5) or (6) motion before the Idaho District Court to vacate the forfeiture and reopen the case based on any change in the applicable law would likely be unavailing. *See e.g., Clifton v. Attorney General of State of California,* 997 F.2d 660, 665 (9th Cir.1993) (change in law after judgment has become final not sufficient basis for vacatur), *cited in United States v. Real Property Located at 12310 Short Circle, Nevada City, Nevada County, California APN: 39–240– 25, Including Appurtenances and Attachments Thereto,* 162 F.R.D. 136, 138 (E.D.Cal. 1995) (denying motion to vacate forfeiture asserted to be violative of double jeopardy based upon ruling in *$405,089.23 U.S. Currency,* 33 F.3d 1210).

In this circumstance, a transfer of this matter *sua sponte* to the Idaho District Court would not be in the interest of justice. *See* 28 U.S.C. § 1631.

C.  Taking Claim

■ Plaintiff asserts that by forfeiting his property in violation of the Double Jeopardy Clause, the Government took his property without providing the just compensation mandated by the Fifth Amendment. Defen-

dant's initial counter-argument in this context is based on the premise that takings relief is foreclosed due to Plaintiff's allegations that the Government action which resulted in the taking was void. It is asserted that in order for a valid claim to arise, the Government must have possessed the authority to carry out the act resulting in the alleged taking. *See Tabb Lakes v. United States,* 10 F.3d 796, 802–03 (Fed.Cir.1993); *Florida Rock,* 791 F.2d at 899; *Deltona Corp. v. United States,* 657 F.2d 1184, 228 Ct.Cl. 476 (1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). Defendant relies upon Court of Federal Claims cases which found that relief was precluded based on an absence of governmental authority to act. *See Eversleigh v. United States,* 24 Cl.Ct. 357, 359 (1991) (no takings jurisdiction as forfeiture alleged invalid for due process violations with relation to seizure); *Golder v. United States,* 15 Cl.Ct. 513, 518 (1988) (administrative forfeiture alleged to be unauthorized due to lack of probable cause); *Noel,* 16 Cl.Ct. at 170 (improper forfeiture cannot give rise to a taking when Drug Enforcement Administration officials acted outside scope of authority).

The cases setting forth the rule Defendant employs involve takings alleged to have arisen when agencies acted outside the scope of their authority in denying land use permits. *See e.g., Florida Rock,* 791 F.2d at 898–99. In *Florida Rock* a foundational jurisdictional condition—that pollution existed—had to have been met in order for an agency to acquire statutory authority to invoke its permit regulations. *Id.* The court explained that a taking resulting from a permit denial would only occur if the agency had acted within its authority in issuing the permit denial in the first place. *Id.*

In contrast, the taking claim alleged in this case stems from forfeiture judgments entered by a district court.[10] The court was

long as two separate punishments are meted out for the same offense, the order of indictments or judgments is not critical. *Compare $405,089.23 U.S. Currency,* 33 F.3d at 1217–20 (criminal conviction then civil forfeiture) *with Ursery,* 59 F.3d at 568 (civil forfeiture then criminal consent judgment).

10. The precedent upon which Defendant relies involves actions by the executive branch—not the judiciary. *See also Southern California Financial Corporation v. United States,* 634 F.2d 521, 523– 24, 225 Ct.Cl. 104, 108–10, (1980) *cert. denied* 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981). Further, as these are permit denial cases where the Government never acquires property

authorized to enter these judgments pursuant to 21 U.S.C. § 881(a). While Plaintiff asserts that the District Court made improper decisions in violation of the Double Jeopardy Clause, he fully admits to the Government's authority to make the forfeiture determinations.

Further, that courts issue rulings which apply the law in a way that is subsequently found to be incorrect does not detract from the fact that they are authorized to issue them. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 695, 69 S.Ct. 1457, 1464, 93 L.Ed. 1628, *reh'g denied* 338 U.S. 840, 70 S.Ct. 31, 94 L.Ed. 514 (1949) ("... the jurisdiction of a court to decide a case does not disappear if its decision on the merits is wrong."). The Supreme Court has rejected the argument that official Government action is invalid if based on an incorrect decision of law or fact if the officer is empowered to perform such action. *Id.* (citing *Adams v. Nagle*, 303 U.S. 532, 542, 58 S.Ct. 687, 692, 82 L.Ed. 999 (1938)).

Thus, unlike in the cases cited by Defendant, where authority was either questioned or lacking, even if the Idaho District Court's determinations were incorrect, the requisite authority behind the Government action at issue is present in this case. Consequently, a taking claim is not precluded by virtue of Plaintiff's allegations that the forfeiture determination was improper or "void". *See 1979 Cadillac*, 833 F.2d at 1000 (illustrating takings jurisdiction by conducting a separate analysis of the merits of takings claim alleged for depreciation in the value of property wrongfully forfeited pursuant to judicial proceedings); *Froudi v. United States*, 22 Cl.Ct. 290, 297 (1991) (no allegation that agency acted outside scope of authority,

therefore claim not precluded); *see also Shelden*, 7 F.3d 1022 (takings jurisdiction over wrongful *in personam* forfeiture).

■ Defendant next argues that the circumstances underlying Plaintiff's claim may not result in a taking, pointing to cases which held *in rem* forfeitures to be non-compensable exercises of the Government's police power.[11] *See e.g.*, *1979 Cadillac*, 833 F.2d at 1000–01 (no taking because forfeiture allowed the Government to foster the public interest in preventing continued illicit use of property), (citing *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, 686–87, 94 S.Ct. 2080, 2089–90, 2093–94, 40 L.Ed.2d 452, *reh'g denied* 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974)); *Perry v. United States*, 28 Fed.Cl. 82, 85 (1993) (punitive or quasi-criminal nature of civil forfeitures causes them to fall under the police power). Defendant maintains that actions taken pursuant to the eminent domain power are intended to utilize the property for the public interest or benefit and, as such, are compensable; whereas actions pursuant to the police power are intended to prevent public harm and thus are not compensable.[12] *Noel*, 16 Cl.Ct. at 170.

The Supreme Court illuminated the results-oriented nature of the police power—eminent domain distinction recently in *Lucas v. South Carolina Coastal Council*, explaining,

"When it is understood that 'prevention of harmful use' was merely our early formulation of the police power justification necessary to sustain (without compensation) *any* regulatory diminution in value; and that the distinction between regulation that 'prevents harmful use' and that which

---

from the claimants in the first place, they cannot be characterized as illegal exactions.

**11.** *Black's Law Dictionary* 801 (6th ed. abridged 1991) defines the police power in pertinent part as follows: "... The power of the State to place restraints on the personal freedom and property rights of persons for the protection of the public safety, health, and morals or the promotion of the public convenience and general prosperity...."

**12.** Courts have taken a similar approach in deciding whether seizures of property in criminal

investigations are compensable takings. *See e.g.*, *United States v. Premises Known as 608 Taylor Ave., Apartment 302, Pittsburgh, Pa.*, 584 F.2d 1297 (3d Cir.1978); *but see King v. United States*, 292 F.Supp. 767, 774 n. 5 (Colo.1968) (citing H.R.Rep. No. 813, 89th Cong., 1st Sess. 2–3 U.S.Code Cong. & Admin.News 1965, p. 1189. (1965)) (House Report accompanying Public Law 89–318 provided for just compensation to owner of forfeited property associated with the Kennedy assassination, noting its necessity under the Takings Clause).

'confers benefits' is difficult, if not impossible to discern on an objective, value-free basis; it becomes self-evident that noxious-use logic cannot serve as a touchstone to distinguish regulatory 'takings'—which require compensation—from regulatory deprivations that do not require compensation.

505 U.S. 1003, 1026, 112 S.Ct. 2886, 2898–99, 120 L.Ed.2d 798 (1992).

Rather than focusing the takings analysis on the police power, *Lucas* emphasized that the controlling issue was the expectation of a compensable property right. *Id.* Further, the *Lucas* court indicated that this analysis will apply to takings involving regulation of use as well as actual physical occupations of property, such as are at issue in the instant case. *Id.* at 1027–31, 2899–2901. By doing so, it created the possibility that a temporary or permanent taking could result from an improper forfeiture in cases where a justified expectation of compensability is present. *Accord Froudi v. United States*, 22 Cl.Ct. at 297–98, (discussing the possibility of a takings action subsequent to an improper forfeiture when property had not been used for an illicit purpose).

Therefore, pursuant to the holding in *Lucas*, the initial step in the takings analysis involves an inquiry into whether Plaintiff had a justified compensable expectation with regard to his forfeited real property and aircraft. Property interests are defined by rules stemming from independent sources such as the state law extant at the time individuals acquire their property interests. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001, 1018–20, 104 S.Ct. 2862, 2872, 2881, 81 L.Ed.2d 815 (1984), *cited in Lucas*, 505 U.S. at 1029–31, 112 S.Ct. at 2901. Federal legislation in force prior to the acquisition of property may also inform the expectation of compensability. *See e.g., California Housing Securities, Inc. v. United States*, 959 F.2d 955 (Fed.Cir.1992) (federal banking legislation necessarily informed the expectation of

bank with regard to future regulation including physical occupation).

In the instant case Plaintiff plead guilty to criminal offenses and it has been adjudicated that these properties were involved in criminal violations. *See supra* at 398–99.[13] Once Plaintiff utilized these properties for illicit activities, any expectation of constitutionally mandated compensation for their loss was extinguished. The possibility of civil forfeiture informed and limited his property interest.

First, the provision under which Plaintiff's property was forfeited—21 U.S.C. § 881(a)(6); Pub.L. 95–633, Title III § 301(a), Nov. 10, 1978, 92 Stat. 3777—was enacted in 1978, exactly when Plaintiff's criminal activity involving the property began. *See* Compl.Exh. H at 3 (Third Amended Forfeiture Complaint alleging a continuing criminal enterprise "since the late 1970's" ... "[b]eginning in 1978"). Further the original version of this statute, which authorized the Government to forfeit a broad spectrum of property used in criminal violations, had been enacted in 1970. *See* 21 U.S.C. § 881(a)(4) (including conveyances such as aircraft, vehicles and vessels).

Second, even if the particular statute invoked against him had not yet been enacted, Plaintiff's expectation of compensability was necessarily informed by the fact that *in rem* forfeiture of properties used in violation of the criminal law is firmly ingrained in this country's jurisprudence. "Long before the adoption of the Constitution the common law courts in the Colonies—and later in the states during the period of Confederation—were exercising jurisdiction in rem in the enforcement of [English and local] forfeiture statutes," which provided for forfeiture of commodities and vessels utilized in violation of revenues and customs laws. *C.J. Hendry Co. v. Moore*, 318 U.S. 133, 138–39, 63 S.Ct. 499, 502–03, 87 L.Ed. 663 (1943), *cited in Calero–Toledo*, 416 U.S. 663, 682–83, 94 S.Ct. 2080, 2091–92, 40 L.Ed.2d 452 (1974). Almost immediately after the adoption of the

---

**13.** The actual summary judgment language has not been provided. However, 21 U.S.C. § 881(a)(6) makes forfeitable the proceeds of criminal violations which are utilized to facilitate illicit activity. *See supra* at 398. As the forfei-

ture complaint consists in large part of evidence of criminal use of all three properties from 1978 onward, and Plaintiff has not presented any allegations to the contrary, it is presumed that their forfeiture resulted from such use.

Constitution, ships and cargoes involved in customs offenses were made subject to forfeiture under federal law,[14] as were vessels used to deliver slaves to foreign countries,[15] and somewhat later those used to deliver slaves to this country.[16] Further, the enactment of forfeiture statutes has not abated and contemporary federal and state forfeiture statutes reach virtually all types of property usable in the conduct of a criminal enterprise. *See Bennis v. Michigan*, —— U.S. ——, 116 S.Ct. 994, 134 L.Ed.2d 68.[17]

Taking into account this historical backdrop, all property owners currently hold their property subject to the restriction that if they use it in the commission of a criminal offense it is forfeitable. Nonetheless, it is plausible that an improper *in rem* forfeiture could give rise to a taking claim. In cases where property is determined to have been improperly forfeited because it is found that it was not used for illicit purposes, it would seem that a property owner legitimately may harbor an expectation of compensability. *See Calero–Toledo*, 416 U.S. 663, 94 S.Ct. 2080, *cited in Froudi*, 22 Cl.Ct. at 297–98.

In the instant case, however, Plaintiff's knowledge and participation in the illicit use of his property necessarily precludes any expectation of compensability and forecloses the possibility of obtaining the just compensation mandated by the Constitution for private property taken for public use.

## V. CONCLUSION

For the foregoing reasons, it is concluded that on the undisputed facts set forth by the parties, Plaintiff has failed to establish the existence of a valid claim upon which relief can be granted by this court. Thus, it is ORDERED that:

(1) Defendant's Motion to Dismiss is GRANTED;

(2) Defendant's motion for a stay is DENIED. Plaintiff's motion for summary judgment shall be filed, by leave of court, and DENIED, for the reasons set forth herein;

(3) Final judgment shall be entered in favor of Defendant dismissing the complaint;

(4) No costs shall be assessed.

---

14. Act of July 31, 1789, §§ 12, 36, 1 Stat. 39, 47; *see also* Act of Aug. 4, 1790, §§ 13, 22, 27, 28, 67, 1 Stat. 157, 161, 163, 176.

15. Act of Mar. 22, 1794, 1 Stat. 347.

16. Act of Mar. 2, 1807, 2 Stat. 426.

17. In *Bennis v. Michigan*, the Supreme Court recently illustrated the breadth of the forfeiture power by upholding a state statute permitting the forfeiture of a wife's interest in a jointly-owned vehicle after her husband had been found participating in a sex act with a prostitute inside the car. *Id.* at ——, 116 S.Ct. at 1001. It was submitted that the innocent owner had no reason to believe that her property was being used for such purposes. *Id.*