RADER, Circuit Judge,
dissenting.
The Tucker Act does not permit this court to address this case without sending New York Life Insurance Company back to bring a proper tax refund action. Repeatedly the Supreme Court has clarified that this court may not imply a waiver of sovereign immunity. United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351-52, 63 L.Ed.2d 607 (1980); United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502-03, 23 L.Ed.2d 52 (1969). Instead each litigant seeking recovery of money from the United States must show an express waiver of sovereign immunity which confers the right to bring the suit. New York Life did not show the required express waiver of sovereign immunity which defines the jurisdiction of the United States Court of Federal Claims. United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769-70, 85 L.Ed. 1058 (1941); Mitchell, 445 U.S. at 538, 100 S.Ct. at 1351-52.
I.
The Internal Revenue Service (IRS) notified New York Life of a 1984 tax liability. After protracted negotiations with the IRS, New York Life agreed to a settlement in late 1993. In a November 1993 letter memorializing the settlement, New York Life agreed that “[t]he Company will pay the tax with respect to this adjustment and reserve the right to prosecute a refund claim therefor.” (Emphasis supplied.) In accordance with this agreement, New York Life freely and voluntarily paid nearly $32 million in December 1993. The letter accompanying the money referred to this transaction six times as a “payment” of taxes. According to the taxpayer’s instructions, the IRS credited part of the payment to interest, which New York Life later deducted. New York Life no doubt made this payment because it knew that the United States had statutorily waived sovereign immunity for tax refund suits, 26 U.S.C. § 7422, in the Court of Federal Claims, 28 U.S.C. § 1346(a)(1). Indeed in 1995, the taxpayer filed an administrative claim in preparation for a tax refund suit.
The IRS did not formally assess the 1984 tax within the time limits. New York Life immediately brought a claim in the Court of Federal Claims for recovery of its “deposit” without seeking a refund of taxes. Before determining whether New York Life made a payment or a deposit, however, this court must first establish jurisdiction to reach the *1561 merits. Jurisdiction, in turn, raises the fundamental defining question: Other than as a tax refund action, where has the United States waived sovereign immunity for a suit to recover money paid as taxes?
II.
The United States, as sovereign, is immune from suit unless it expressly waives its immunity. Library of Congress v. Shaw, 478 U.S. 310, 315, 106 S.Ct. 2957, 2961-62, 92 L.Ed.2d 250 (1986); Sherwood, 312 U.S. at 586, 61 S.Ct. at 769-70. Claims for money from the United States therefore must include a specific reference to a statute that gives consent for the suit. Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277-78, 77 L.Ed.2d 938 (1983); Mitchell, 445 U.S. at 538, 100 S.Ct. at 1351-52. New York Life invokes only the Tucker Act as its waiver of sovereign immunity.
The Tucker Act, however, standing alone does not waive sovereign immunity for a suit against the United States. Mitchell, 445 U.S. at 538,100 S.Ct. at 1351-52. Rather, as the Supreme Court has repeatedly clarified, the Tucker Act is merely a jurisdictional statute. Id. Claimants against the United States “must look beyond the jurisdictional statute [the Tucker Act] for a waiver of sovereign immunity with respect to their claims.” Id. Without a statute “unequivocally express[ing]” a waiver of sovereign immunity, King, 395 U.S. at 4, 89 S.Ct. at 1502-03, New York Life simply cannot entertain its action in the Court of Federal Claims. The Tucker Act, on which New York Life relies as a waiver of immunity, confers no substantive right to sue the United States, and consequently, does not waive sovereign immunity. Sherwood, 312 U.S. at 586-88, 61 S.Ct. at 769-71. New York Life fails the most elemental test for a non-contract claim under the Tucker Act: it does not invoke a money-mandating statute to open the sovereign immunity door to the Court of Federal Claims.
III.
Desperate to find some path into the Court of Federal Claims without an express waiver of sovereign immunity, New York Life reaches for the “illegal exaction” dicta from East-port Steamship Carp. v. United States, 178 Ct.Cl. 599, 372 F.2d 1002 (1967). Although the illegal exaction notion often appears in cases before Court of Federal Claims [1] this court has never considered how sovereign immunity provides jurisdiction for the East-port dicta about illegal exaction. Without any reasoning to show the consent of the United States to such a suit, this court’s predecessor suggested that the Tucker Act waives immunity when “the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.” 372 F.2d at 1007.
Although never expressed, the apparent reasoning of the Court of Claims in 1967 was that the United States Code would not create a statutory or regulatory regime without providing a remedy for recovery of money exacted under an illegal application of those laws or regulations. The most elemental problem with the illegal exaction dicta and its unspecified reasoning is that a waiver of sovereign immunity “cannot be implied but must be unequivocally expressed.” King, 395 U.S. at 4, 89 S.Ct. at 1503. The mere implication that the United States would not in fairness retain illegally exacted funds does not create a remedy or waive sovereign immunity.
In this case, however, this court need not struggle to find a waiver of sovereign immunity for the illegal exaction notion because the United States Code has already provided a clear remedy to recover taxes paid without legal basis. Indeed 28 U.S.C. § 1346 expressly waives sovereign immunity and provides jurisdiction for recovery of funds paid as taxes. With a remedy in place, New York Life has a legal recourse to recover funds, even if “improperly paid, exacted, or taken” and cannot argue that fairness compels this *1562 court to imply a waiver of sovereign immunity. In sum, either because a single sentence of dicta in a 1967 Court of Claims opinion cannot grant (unequivocally or otherwise) the consent of the United States or because no illegal exaction takes place in the face of an express statutory remedy for recovery of funds, New York Life has not answered the first question for any suit in the Court of Federal Claims: where is the waiver?
Even if judicial fiat could waive the immunity of the United States, the Eastport illegal exaction dicta would not suffice because it is not even a court order, judgment, or holding. The holding of Eastport rests on familiar sovereign immunity principles. Eastport stands for the proposition, since many times repeated by the Supreme Court, see, e.g., Mitchell, 445 U.S. at 538, 100 S.Ct. at 1351-52, United States v. Testan, 424 U.S. 392, 401-02, 96 S.Ct. 948, 954-55, 47 L.Ed.2d 114 (1976), that not every violation of a federal statute waives sovereign immunity and gives access to the Court of Claims under the Tucker Act, but only the violation of statutes mandating the payment of money damages. 372 F.2d at 1007-08. In fact, in Eastport, the Court of Claims held that it could “not evade these [sovereign immunity] barriers by incorporating into Section 9 [of the Shipping Act] something which is not there, either in terms or by fair implication — a mandate for compensation.” 372 F.2d at 1011. Because the Shipping Act did not mandate the payment of damages, the shipping company could not entertain a suit in the Court of Claims.
Thus, the rule in Eastport differs drastically from its illegal exaction dicta. Similarly, the Supreme Court in Testan, citing East-port, referred to the Eastport dicta, but held that the Tucker Act does not operate to waive sovereign immunity. 424 U.S. at 400-01, 96 S.Ct. at 954-55. To the extent that the dicta in Eastport or Testan created any ambiguity on this fundamental point, the Supreme Court clarified it in Mitchell:
The individual claimants in this action premised jurisdiction in the Court of Claims upon the Tucker Act---- The Tucker Act is “only a jurisdictional statute; it does not create any substantive right enforceable against the United States____”
The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity with respect to their claims.
445 U.S. at 538, 100 S.Ct. at 1351-52. Under the Eastport/Testan/Mitchell rule (as opposed to the dicta), the question remains: where is the waiver for New York Life’s claim?
In one sense, this court’s opinion could have stopped after saying: “The Code does not deal with deposits of taxes or provide procedures for their making or recovery.” If the United States Code has not waived sovereign immunity for recovery of deposits as this passage seems to concede, where is the waiver? New York Life thinks the waiver is in the Tucker Act standing alone, but the rule in Mitchell, as applied by both Eastport and Testan, requires a money-mandating statute in addition to the Tucker Act. Where is that waiving statute?
In another sense, this court’s statement above that the Code provides no procedures for recovery of money paid as taxes cannot be correct. Even New York Life has taken steps to institute a tax refund action under 28 U.S.C. § 1346. These facts illustrate the stark contradictions in New York Life’s contentions. It acknowledges that the United States has waived immunity in supplying a procedure for recovery of money paid as taxes. Yet it refuses in this action to pursue that proper legal course.
On still another level, New York Life has not shown that it even fits within the illegal exaction dicta of Eastport. As noted before, to fit within this dicta, a claimant “must assert that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.” 372 F.2d at 1007. In the first place, New York Life makes no showing that the IRS improperly exacted or that it improperly paid its 1984 tax liability in 1993. To the contrary, New York Life freely paid the liability after extensive negotiations. The facts disclose no improper payment or exaction, only a voluntary payment of taxes. New York Life indeed reserved the right to bring a tax refund action, but that is not this *1563 claim. Moreover the IRS contravened no law. The IRS merely accepted money freely paid. What law did the IRS contravene by accepting payment under a settlement agreement? The question remains: where is the waiver?
IV.
This dissent recognizes the reasons that New York Life seeks to escape the strictures of sovereign immunity. Fairness and equity cry out for a taxpayer to recover its money if a later determination shows no taxes were due at the time of payment. The noble objective of fairness cannot trump, however, the legal processes for achieving that fairness. The United States Code has established a due legal process to provide fairness to New York Life and other taxpayers. Under that process, a taxpayer can indeed recover overpayments or unnecessary payments by filing an administrative tax refund claim, see 26 U.S.C. § 6511, and a tax refund suit at the Court of Federal Claims, if necessary. Indeed New York Life has followed that procedure and has pending a claim which has followed the proper legal course to recover any funds it paid without owing.
In other words, New York Life is already guaranteed everything it expressly bargained for and agreed to in its settlement with the IRS — a right to file a tax refund suit under statutes that properly waive sovereign immunity to suit in the Court of Federal Claims. Meantime New York Life should not presume to ignore the doctrines of sovereign immunity, which form the basis of jurisdiction under the Tucker Act. For this suit, New York Life has yet to answer the question: where is the waiver?

. See, e.g., Crocker v. United States, 37 Fed. Cl. 191, 197-99 (1997); Bowman v. United States, 35 Fed. Cl. 397, 400-01 (1996); ABN Amro Bank N.V. v. United States, 34 Fed. Cl. 126, 136 (1995); El Dorado Springs v. United States, 28 Fed. Cl. 132, 135 (1993); Merck & Co., Inc. v. United States, 24 Cl.Ct. 73, 78 (1991); Lark v. United States, 17 Cl.Ct. 567, 569 (1989); Passaro v. United States, 4 Cl.Ct. 395, 397 (1984).