**Clayton Adam SEAY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 02–582C.

United States Court of Federal Claims.

June 17, 2004.

Michael R. Mazzoli, Louisville, KY, for plaintiff.

Cristina C. Ashworth, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General, and Director David M. Cohen, for defendant.

## ORDER ON MOTION TO DISMISS

FIRESTONE, Judge.

Pending before the court is the United States' (the "government's") August 26, 2003 motion to dismiss the plaintiff's amended complaint. The plaintiff seeks damages for property that he contends was improperly held by the government and damaged or destroyed during a criminal investigation. The plaintiff claims that the government's actions resulted in either a "taking" without compensation in contravention of the Fifth Amendment or an "illegal exaction." The government moves for dismissal under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), arguing that this court lacks subject matter jurisdiction to hear the claim and that the plaintiff's only right to relief rested in the district court. In the alternative, the government moves for dismissal under Rule 12(b)(6) of the RCFC, on the grounds that the plaintiff has failed to state a claim for a taking or illegal exaction because the government properly took the property under its police powers and returned it when the investigation was complete. For the reasons that

follow, the government's motion to dismiss is hereby **GRANTED**.

### Background Facts

The following facts are not in dispute. Beginning in 1991, the plaintiff operated a custom screen printing business in New Albany, Indiana. On November 9, 1993, under the suspicion that the plaintiff was engaged in the unlicensed manufacture of designs protected by copyright and trademark, agents from the United States Postal Inspection Service ("USPIS") obtained a warrant to search the plaintiff's place of business for transparencies, computer equipment, machinery, and $2,190 in cash. After the USPIS obtained custody of the transparencies, computer equipment, and machinery, they were stored at an independently-owned storage facility.

On April 29, 1994, while the plaintiff was still under suspicion of criminal activity, the government informed the plaintiff's attorney by letter that "[I]t is my understanding that we are in a position to return some of the equipment seized during the searches.... Some might be returned to your client(s)." Again, on July 24, 1994, the government informed the plaintiff's attorney that "we are still in a position to return some of the equipment seized during the searches.... Some might be returned to your client(s)." The government also wrote the plaintiff's new attorney on July 21, 1994, repeating that some of the plaintiff's equipment may be returned and that the government "will await your word on this issue, too."

The plaintiff failed to retrieve any of his equipment, and sometime around January 29, 1997, the plumbing ruptured in the storage facility containing the plaintiff's belongings, causing severe damage to certain items and reduction in value in others. In November 1998, the statute of limitations expired for the crime for which the plaintiff was being investigated, along with the statute of limitations for government-instigated forfeiture proceedings. The government did not charge the plaintiff with any criminal wrongdoing. Thereafter, on April 16, 1999, the government sent the plaintiff a letter informing him that he could retrieve his belongings. The government informed the plaintiff that he needed to sign a hold-harmless agreement releasing the government from any liability from damage to the plaintiff's property. The plaintiff never signed the hold-harmless agreement. The plaintiff retrieved his possessions in May or June 1999, only to discover the damage caused by the ruptured water pipe. The plaintiff claims that the damaged property was worth approximately $250,000.

Upon advice from the USPIS, the plaintiff filed a SF95 tort claim with the USPIS on September 8, 1999 for the alleged damage to his property. The plaintiff sought a total of $835,476.62 in damages, of which $235,476.62 was for property damage and $600,000.00 was for personal injury. The USPIS denied the plaintiff's claim explaining that the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, has a specific exception to the type of recovery that the plaintiff sought: "[T]he FTCA excludes claims 'arising in respect of ... the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer.'" The USPIS also stated that it was only leasing the storage space, and therefore no USPIS employee was negligent, as required by the FTCA.

Thereafter, in 2000, the plaintiff filed an action in the United States District Court for the Southern District of Indiana (the "district court") seeking compensation for his damaged and destroyed property under Rule 41(e)[1] of the Federal Rules of Criminal Procedure ("F.R.Crim.P."). The government filed a motion to dismiss, arguing that sovereign immunity bars the plaintiff's claim for damages. In particular, the government argued that under Rule 41(e), the plaintiff is

---

1. The rule has since been retitled 41(g) and states:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

entitled only to have the property returned to him, and that he is not entitled to damages.

On March 5, 2002, the district court agreed with the government and held that it did not have the authority to award damages under Rule 41(e). The district court indicated, however, that it believed that the United States Court of Federal Claims would be authorized to hear the plaintiff's claim and granted the plaintiff's request under 28 U.S.C. § 1631, to transfer the claim to this court. The district court stated that "the substances of the action appears to be precisely the type of claim that the Court of Federal Claims is authorized to hear." *Seay v. United States*, 2002 WL 440238, *5 (S.D.Ind. March 25, 2002).

The plaintiff first filed his complaint on July 2, 2002 seeking: 1) the return of any property that the USPIS still held; 2) damages in an amount that covered the value of the destroyed or disposed of property; 3) payment to compensate the plaintiff for the government's use of his property while in custody; and 4) disgorgement of all prejudgment interest on all currency seized by the government. The plaintiff then filed an amended complaint on May 1, 2003. In the amended complaint, the plaintiff seeks damages for the lost value of the destroyed or disposed of property. The government filed a motion to dismiss the amended complaint on August 26, 2003. The plaintiff filed its response on October 3, 2003. Oral argument on the government's motion to dismiss was heard on June 3, 2004.

## DISCUSSION

### I. Standard of Review

The government asserts that the plaintiff's claims should be dismissed for lack of subject matter jurisdiction under RCFC Rule 12(b)(1) and for failure to state a claim upon which relief can be granted under RCFC Rule 12(b)(6). In determining jurisdiction under Rule 12(b)(1), "[t]he court should look beyond the pleadings and decide for itself those facts, even in dispute, which are necessary for a determination of [the] jurisdictional merits." *Detroit Housing Corp. v. United States*, 55 Fed.Cl. 410, 412 (2003) (quoting *Pride v. United States*, 40 Fed.Cl. 730, 732 (1998)).

The court, in reviewing a motion to dismiss under Rule 12(b)(6), must construe the allegations favorably to the pleader and must deny the motion if those facts reveal any possible basis upon which the pleader may prevail. *Commonwealth Edison Co. v. United States*, 56 Fed.Cl. 652, 655 (2003); *Corrales v. United States*, 56 Fed.Cl. 283 (2003). A motion to dismiss under Rule 12(b)(6) may be granted only if it appears "beyond doubt that [the plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (internal citations omitted); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998); *Commonwealth Edison Co.*, 56 Fed.Cl. at 655.

The burden, however, is on the pleader to prove that the court has jurisdiction to hear its claims. *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991) (citing *KVOS, Inc. v. Assoc'd Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936)) ("A party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists.").

### II. The Plaintiff Has Failed to State a Taking Claim

The plaintiff concedes that the initial seizure of his property was lawful, but argues that the prolonged holding of and eventual damage to his possessions constitutes a taking, even though the government eventually returned the plaintiff's possessions. The plaintiff argues that the government waited until April 1999 to make its first "overture" about the return of his goods. The plaintiff contends that, even though he received the letters in 1994 inviting him to recover some of his property, he "believed that the only reasonable course available to [him] was to wait until the United States terminated its investigation." Seay Aff. at ¶ 5.

The government argues in response that the seizure and retention of the plaintiff's property was a proper exercise of the government's police power. The government

further argues that seizing belongings for a criminal investigation is not a taking for a "public purpose" under the Fifth Amendment and thus, a seizure in connection with a criminal investigation does not give rise to a claim for just compensation.

The court agrees with the government and finds that the retention of the plaintiff's belongings during the criminal investigation does not amount to a taking by the government. The government lawfully seized the plaintiff's property and held it for the duration of a criminal investigation. The government ultimately returned the belongings, although damaged, and, therefore, the government never "took" the plaintiff's belongings.

The plaintiff's assertion that the government can be liable for a taking if it holds onto lawfully seized property for too long is not supported. The case law consistently provides that so long as the seizure was lawful, retention of the property for the duration of the criminal proceeding does not give rise to a taking. As the court stated in *Golder v. United States*, 15 Cl.Ct. 513, 518 (1988), "if probable cause did exist, the seizure and *retention* of the [possessions] during the pendency of the forfeiture action would not constitute a compensable taking." (Emphasis added). *See also Froudi v. United States*, 22 Cl.Ct. 290, 300 (1991) (citing *United States v. Dickerson*, 857 F.2d 1241 (9th Cir.1988)). Here, the property was held during the entire criminal investigation. Once the statute of limitations passed, the government contacted the plaintiff and asked him to retrieve his possessions. The plaintiff indeed recovered his belongings. There is no taking associated with the retention of property that is ultimately returned.

To the extent the plaintiff is seeking the lost value of the property, the claim is barred based on the reasoning of the Federal Circuit in *United States v. One (1) 1979 Cadillac Coupe De Ville*, 833 F.2d 994 (Fed.Cir.1987). In that case, the Circuit held that the plaintiff was not entitled to depreciation for the decrease in value of a vehicle that had been held in police custody, but was not ultimately forfeited. The Federal Circuit stated that "[t]he fact that the jury ultimately found that

the vehicle had not been used to facilitate a narcotics transaction did not make the government seizure and possession ... until the forfeiture proceeding was completed any less proper, or convert the seizure into a taking." *Id.* at 1000. As in *One Cadillac*, the plaintiff here had his belongings returned to him after the government decided not to bring a case against him. The fact that the property was damaged during the period of the government's retention does not distinguish this case from *One Cadillac*. The plaintiff's argument that the government damaged his property while it was in the government's custody does not convert an otherwise proper seizure into a taking. *See Id.; Alde, S.A. v. United States*, 28 Fed.Cl. 26 (1993).

The reason that these claims do not amount to a taking is because items properly seized by the government under its police power are not seized for "public use" within the meaning of the Fifth Amendment. The Supreme Court has held that "the government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan*, 516 U.S. 442, 452–53, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) (citing *United States v. Fuller*, 409 U.S. 488, 492, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973)). "If the Government acts to secure a benefit for the public, a taking arises.... Government action aimed at protecting ... its citizens 'traditionally has constituted a non-compensable exercise of the Government's police power." *Alde*, 28 Fed.Cl. at 34 (citing *Jarboe–Lackey Feedlots, Inc. v. United States*, 7 Cl.Ct. 329, 338–39 (1985)).

The plaintiff's reliance on *Paalan v. United States*, 51 Fed.Cl. 738 (2002) to suggest that a taking arises if the government holds property beyond the period needed for a criminal proceeding is misplaced. There, the court found that a plaintiff, who was court-martialed, had "established his reasonable expectation of compensation" for his personal property seized by the government pursuant to the criminal investigation. In that case, however, the *Paalan* court expressly noted that the government did not challenge the

plaintiff's contention that the retention of evidence amounted to a taking:

> The court underscores that this conclusion does not represent an extension of takings jurisprudence to a new category of property interest, but follows because defendant has failed to challenge the merits of either plaintiff's allegation that ... the Government's retention of stale evidence constitutes a taking.

*Id.* at 752. Here, the government is plainly challenging the plaintiff's assertion that the retention of his belongings constituted a taking.

In addition, in contrast to other cases involving the retention of property, the plaintiff's claim in this case is not based on the government's retention of his belongings but to the damage caused to his belongings while in the government's custody. As the plaintiff conceded during oral argument, the government had no right to damage the plaintiff's property. As such, the damage to the plaintiff's property was not authorized. In such circumstances, the plaintiff's claim sounds in tort. *Board Machine, Inc. v. United States,* 49 Fed.Cl. 325, 332 n. 9 (2001) ("claims based upon 'unauthorized acts of Government officials sound in tort.' ") (citations omitted). This court does not have jurisdiction over actions sounding in tort. The Federal Tort Claims Act vests exclusive jurisdiction in the district courts. *Mients v. United States,* 50 Fed.Cl. 665, 672 (2001) ("The Court of Federal Claims has no power to adjudicate torts ... whether brought under the FTCA or otherwise. The Tucker Act specifically excludes tort claims from the jurisdiction of the court ... and the FTCA vests exclusive jurisdiction over tort actions in the district courts.") (citations omitted). *See also McCauley v. United States,* 38 Fed.Cl. 250, 264 (1997). In this connection, the court notes that the Seventh Circuit has recently concluded, contrary to the statements of the USPIS to the plaintiff in this case, that the exception for "law enforcement officers" set forth in the FTCA applies only to damages caused by officers performing customs and excise duties. *See Ortloff v. United States,* 335 F.3d 652, 658 (7th Cir.2003). Thus, it would appear that the plaintiff may have had a viable tort claim.

For all of the reasons set forth above, the plaintiff has failed to state a takings claim for the period of time his property was retained and damaged by the government pending the final outcome of his criminal investigation. The period of retention does not give rise to a takings claim and any damages caused to the plaintiff's property during that period do not give rise to a takings claim. Accordingly, the plaintiff's taking claim must be dismissed.

### III. The Plaintiff Has Failed to State a Claim for an Illegal Exaction

██ In the alternative, the plaintiff argues that the retention of the plaintiff's property by the government was an illegal exaction. An illegal exaction occurs when a " 'plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.' " *Bowman v. United States,* 35 Fed.Cl. 397, 399 (1996) (citing *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 602, 372 F.2d 1002 (1967)). The Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power. *Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1572–73 (Fed.Cir.1996) (citing *Eastport,* 178 Ct.Cl. at 605, 372 F.2d 1002).

██ Here, the plaintiff argues that by virtue of the government's action in damaging his property, the plaintiff did not recover back that which was taken and that which he was entitled to recover. The plaintiff argues that because he would have had the right to recover the monetary value of the property had it been improperly forfeited, then "clearly the lesser remedy of recovering the monetary value of property *that has been damaged* is also available." Pl.'s Resp. to Def.'s Mot. to Dismiss at 9 (emphasis in original). In support of his claim, the plaintiff relies on *Bowman,* 35 Fed.Cl. 397. In *Bowman,* the court held that a plaintiff may state a claim for money for property illegally exacted by the government and later sold. Importantly,

the court questioned whether the plaintiff could recover damages for property returned to the plaintiff: "It is unclear whether [the plaintiff] could recover the value of lost rents or depreciation." *Id.* at 401 (citing *One Cadillac*, 833 F.2d at 998–99).

The government argues that the plaintiff, in conceding that his property was legally seized and returned, has failed to identify any basis for an illegal exaction claim. The government argues that because the plaintiff's property was held in storage and not sold, there is no profit to disgorge. The government also argues it is not illegally withholding money due the plaintiff since the government did not benefit from forfeiture and sale of the plaintiff's property. For these reasons, the government argues that *Bowman* does not support the plaintiff's claim.

The court agrees with the government. The government has not "illegally exacted" the plaintiff's property. The government plainly returned the plaintiff's property to the plaintiff. The problem was that the property was damaged. As discussed above because the plaintiff is actually seeking compensation for damages to his property his claim sounds in tort. Tort actions are controlled by the FTCA and must be brought in district courts. The plaintiff cannot convert his tort action into an action for illegal exaction, where, as here, the property was returned to the plaintiff. The plaintiff had a potential claim for damages in the district court under the FTCA. He has failed to state a claim based on an "illegal exaction" theory.

## CONCLUSION

For the reasons stated above, the government's motion to dismiss is **GRANTED**. The Clerk is directed to dismiss the plaintiff's complaint. Each party shall bear its own costs.

**IT IS SO ORDERED.**