**Laverne MIENTS, pro se, Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

**No. 01–367C.**

United States Court of Federal Claims.

Oct. 30, 2001.

---

Laverne Mients, Wymore, NE, pro se.

Richard P Schroeder, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant.

## *OPINION*

MILLER, Judge.

This case is before the court on defendant's dispositive motion, which raises an issue of first impression: whether the court has jurisdiction to entertain plaintiff's claim

for "Contractual violations and Acts of Discrimination and Reprisal committed by agencies of the United States," Compl. filed June 21, 2001, § 1, ¶ 1, under a recent, but obtuse, statute that confers jurisdiction to adjudicate discrimination complaints against the United States Department of Agriculture (the "USDA").[1] Argument is deemed unnecessary.

### FACTS

The following facts are taken from the complaint. Where possible, the court has examined orders and opinions from other tribunals to which the complaint appears to refer. Laverne Mients ("plaintiff")[2] is a resident of Wymore, Nebraska. Plaintiff's complaint sets forth the following facts:

1. I ran a farming operation from about 1959.

2. I got my first loan on September 1, 1967, to buy 120 acres of dry land farm ground.

3. FHA [the Farmers Home Administration] pulled 380 acres from under me in 1985.

4. In 1995 FHA sold my last farm 115 acres.

5. My equipment was seized and sold in 1997.

Compl. § 2, ¶¶ 1–5. Plaintiff characterizes his claim as one "for reprisal, discrimination, injury, and damages, and unlawful, fraudulent and criminal theft of the claimants [sic] machinery and private property and equipment." *Id.* § 3, ¶ 4. Plaintiff seeks "the return, replacement or compensatory damages" in the sum of $979,714.00 for "reprisal, discrimination, injury and damages to livestock, hogs, machinery, and equipment, and resulting loss of production." *Id.*

Defendant's motion to dismiss commendably assembles a number of documents from the District Court of Gage County, Nebras-

ka, and the United States District Court for the District of Nebraska that help to fill out the contours of plaintiff's complaint.

*The 1985 foreclosure referred to in paragraph 3 of the complaint*

On January 14, 1985, Helen F. Kalinger and three other individuals obtained judgment against plaintiff from the District Court of Gage County, Nebraska, on an outstanding debt from a 1979 contract for the sale of land in Gage County. Summ. J., *Kalinger v. Meints*, No. 68, p. 138 (Dist.Ct.Neb. Jan. 14, 1985). A foreclosure sale was held at which the Farmers Home Administration (the "FHA") purchased the land described, as follows:

The East Half of the Southwest Quarter and the Southeast Quarter of Section 25, Township 2 North, Range 6 East of the 6th P.M. and the Northeast Quarter of Section 36, Township 2 North, Range 6 East of the 6th P.M., Gage County, Nebraska.[3]

Order Confirming Sale, *Kalinger,* No. 68, p. 138 (filed May 3, 1985). Subsequently, the Clerk of the District Court of Gage County, Nebraska, issued a writ of assistance commanding the Sheriff of Gage County to oust plaintiff from the land and place the United States in sole and exclusive possession. Writ of Assistance, *Kalinger,* No. 68, p. 138 (filed Aug. 22, 1985).

*The 1995 foreclosure referred to in paragraph 4 of the complaint*

From March 22, 1979, through September 10, 1981, plaintiff executed and delivered to the FHA a number of promissory notes in exchange for FHA loans, pledging the following property as security:

The South Half of the Northwest Quarter (S ½ NW 1/4) and the Northeast Quarter of the Southeast Quarter (NE 1/4 SE 1/4) all of Section 13, Township 2 North, Range 6 East of the 6th P.M., Gage County, Nebraska, except that part conveyed to the

---

1. The complaint is divided into five sections, each containing separately numbered paragraphs. Citations to the complaint therefore include both a section and a paragraph number.

2. Plaintiff has styled his case "Laverne Mients v. United States." The first paragraph and the signature line of the complaint spell plaintiff's name

"Mients." Plaintiff, however, signed the complaint "Meints" and used this spelling throughout his September 20, 2001 brief.

3. A subsequent quitclaim deed from the United States, recorded on July 11, 1995, indicates that this land, less a portion deeded to the Burlington and Quincy Railroad, amounted to 384.84 acres.

State of Nebraska in Return of Appraisers, Misc. Book 24, Page 95 and that part conveyed to the State of Nebraska by Warranty Deed recorded in Book 151, Page 33 of the records of Gage County, Nebraska. (hereinafter, the "115 acres"). J. & Decree of Foreclosure at 2, *United States v. Meints,* No. 4:CV91–3059 (D.Neb. Dec. 9, 1993) (accepting as true allegations contained in Government's complaint at 2–6, *Meints,* No. 4:CV91–3059 (filed Feb. 21, 1991)).

Plaintiff subsequently defaulted on these loans, and on December 9, 1993, the Government obtained a Judgement and Decree of Foreclosure from the United States District Court for the District of Nebraska. On July 14, 1994, the district court issued an order confirming the sale of the 115 acres by public auction at which FHA again was the highest bidder. Order Confirming Sale, *Meints,* No. 4:CV91–3059 (filed July 14, 1994).

*The 1997 seizure referred to in paragraph 5 of the complaint*

To further secure the payment of the aforementioned promissory notes, plaintiff pledged as security irrigation equipment located on the 115 acres. Financing statements were filed in the Office of the County Clerk of Gage County on June 25, 1981, and September 15, 1981. Compl. at 1–2, *United States v. Meints,* No. 4:CV96–3030 (D. Neb. filed Jan. 23, 1996). Default judgment on these notes again was entered in favor of the Government on August 20, 1996, and in 1997 a foreclosure sale was held at which the irrigation equipment was sold by auction. Order Confirming Sale, *Meints,* No. 4:CV96–3030 (filed Jan. 15, 1998).

Defendant moves to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Defendant also argues that some or all of plaintiff's claims are barred by res judicata and the applicable statute of limitations.

## DISCUSSION

■ The burden of proving that the Court of Federal Claims has subject matter jurisdiction over a claim rests with the party seeking to invoke its jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). The plaintiff's complaint must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a). At the pleading stage, general factual allegations may suffice to meet this burden, for on a motion to dismiss the court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). However, because proper jurisdiction is not merely a pleading requirement, "but rather an indispensable part of the plaintiff's case, each element [of subject matter jurisdiction] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citing *Nat'l Wildlife Fed'n,* 497 U.S. at 883–89, 110 S.Ct. 3177; *Gladstone, Realtors v. Vill. of Bellwood,* 441 U.S. 91, 114–15 & n. 31, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 45 n. 25, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin,* 422 U.S. 490, 526–27 & n. 6, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (Brennan, J., dissenting)). Therefore, as the party invoking federal jurisdiction in this action, plaintiff bears the burden of pleading the facts upon which the court's jurisdiction depends. *McNutt,* 298 U.S. at 189, 56 S.Ct. 780.

As the above recitation of the complaint shows, it does not contain "a short and plain statement of the grounds upon which the court's jurisdiction depends," and plaintiff has not identified specific facts that justify jurisdiction. Nevertheless, the court is obligated to determine whether any of the facts alleged reveal "any possible basis on which the non-movant might prevail." *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Mindful that complaints filed by *pro se* litigants are held "to less stringent standards than formal

pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *accord Roche v. USPS*, 828 F.2d 1555, 1558 (Fed.Cir.1987), the court has carefully read and reread the complaint and finds no basis for jurisdiction.

### 1. *7 U.S.C. § 2279 note*

■ Plaintiff states that "this administrative claim is made pursuant to the provisions of Public Law No. 105–277 (Title 7 CFR, Sections 741 and 742)." Compl. § 3, ¶ 4.[4] The Act of Oct. 21, 1998, Pub.L. No. 105–277, § 101(a), 112 Stat. 2681–30 (codified as a note to 7 U.S.C. § 2279 (2000)), provides:

(a) To the extent permitted by the Constitution, any civil action to obtain relief with respect to the discrimination alleged in an eligible complaint, if commenced not later than 2 years after the date of the enactment of this Act [Oct. 21, 1998], shall not be barred by any statute of limitations.

(b) The complainant may, in lieu of filing a civil action, seek a determination on the merits of the eligible complaint by the Department of Agriculture if such complaint was filed not later than 2 years after the date of enactment of this Act [Oct. 21, 1998]. The Department of Agriculture shall—

(1) provide the complainant an opportunity for a hearing on the record before making that determination;

(2) award the complainant such relief as would be afforded under the applicable statute from which the eligible complaint arose notwithstanding any statute of limitations; and

(3) to the maximum extent practicable within 180 days after the date a determination of an eligible complaint is sought under this subsection conduct an investigation, issue a written determination and propose a resolution in accordance with this subsection.

(c) Notwithstanding subsections (a) and (b), if an eligible claim is denied administratively, the claimant shall have at least 180 days to commence a cause of action in a Federal court of competent jurisdiction seeking a review of such denial.

(d) The United States Court of Federal Claims and the United States District Court shall have exclusive original jurisdiction over—

(1) any cause of action arising out of a complaint with respect to which this section waives the statute of limitations; and

(2) any civil action for judicial review of a determination in an administrative proceeding in the Department of Agriculture under this section.

(e) As used in this section, the term "eligible complaint" means a nonemployment related complaint that was filed with the Department of Agriculture before July 1, 1997 and alleges discrimination at any time during the period beginning on January 1, 1981 and ending December 31, 1996—

(1) in violation of the Equal Credit Opportunity Act (15 U.S.C. 1691 et seq.) in administering—

(A) a farm ownership, farm operating, or emergency loan funded from the Agricultural Credit Insurance Program Account; or

(B) a housing program established under title V of the Housing Act of 1949 [42 U.S.C. § 1471 et seq.]; or

(2) in the administration of a commodity program or a disaster assistance program.

(f) This section shall apply in fiscal year 1999 and thereafter.

(g) The standard of review for judicial review of an agency action with respect to an eligible complaint is de novo review. Chapter 5 of title 5 of the United States Code shall apply with respect to an agency

---

**4.** It is not clear whether plaintiff means to allege that this statute provides a basis for recovery, or merely extends the statute of limitations applicable to his lawsuit. *Compare Compl.* § 1, ¶ 3, § 3, ¶ 3, *with id.* § 3, ¶ 4. Because defendant has moved to dismiss for lack of jurisdiction, the court examines the statute to determine whether it might afford plaintiff jurisdiction. The court, however, is at a loss with regards to plaintiff's reference to title 7 of the Code of Federal Regulations. Parts 741 and 742 of that title concern licenses for sirup warehouses and cottonseed warehouses, respectively.

action under this section with respect to an eligible complaint, without regard to section 554(a)(1) of that title.

The application of this statute is a matter of first impression for the court.

Subsection (d) of this note provides the Court of Federal Claims with two bases for jurisdiction. First, under paragraph (d)(1), the court has jurisdiction over a cause of action "arising out of" a complaint for which subsection (a) waives the statute of limitations. Subsection (a) imposes two requirements for a waiver of the statute of limitations: (1) The action must be filed by October 21, 2000, two years after the enactment of the statute; and (2) the discrimination that is the subject of the action must have been alleged previously in an "eligible complaint." Plaintiff's complaint in this case was filed on June 21, 2001, more than two years after the enactment of the statute. It is therefore not a complaint for which subsection (a) waives the statute of limitations, and jurisdiction thus is not proper under paragraph (d)(1).[5]

Second, paragraph (d)(2) provides the Court of Federal Claims with jurisdiction to review a determination "in an administrative proceeding in the Department of Agriculture under this section." The only USDA proceeding discussed in 7 U.S.C. § 2279 is the one described in subsection (b) of the note. Subsection (b) allows a plaintiff, in lieu of filing an action in federal district court or the Court of Federal Claims, to seek a determination from the USDA on allegations of discrimination contained in an eligible complaint. As with subsection (a), subsection (b) requires that (1) the USDA action must be filed by October 21, 2000, two years after the enactment of the statute; and (2) the discrimination that is the subject of the action must have been alleged previously in an "eligible complaint."

It appears from the documents submitted by defendant that plaintiff did file a "Notice of Administrative Claim" for "Genocide, Reprisal, Discrimination, Injury, and Damages" allegedly caused by the USDA, dated October 20, 2000.[6] Assuming that plaintiff intended to file an action under subsection (b), his complaint in this case contains no allegation that plaintiff's claims for discrimination previously were made to the USDA in an "eligible complaint." To be an "eligible complaint" under subsection (e), the initial allegations of discrimination must have been filed with the Department of Agriculture before July 1, 1997.

Plaintiff alleges that he "has attempted to settle this through the Administrative process by filing a Claim with the United States Department of Agriculture," Compl., § 1, ¶ 2, and that "[t]he claim, that is the basis for this action, was properly filed within the required time limits pursuant to Public Law No 105–277," id., § 1, ¶ 3. These general allegations are not sufficient to withstand defendant's motion to dismiss. The plaintiff bears the burden of pleading the facts upon which the court's jurisdiction depends, and "[i]f his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof." *McNutt,* 298 U.S. at 189, 56 S.Ct. 780. Plaintiff should have offered some evidence in response to defendant's motion that he filed a claim for discrimination prior to July 1, 1997. Because plaintiff has offered no specific allegation that he filed an "eligible complaint," no jurisdiction lies in this court under paragraph (d)(2) of the note to 7 U.S.C. § 2279.

### 2. *Tucker Act*

Under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1994 & Supp. V 1999), the Court of Federal Claims is authorized to

---

**5.** Furthermore, for the reasons discussed below, plaintiff has not alleged that he previously filed an "eligible complaint."

**6.** The administrative claim does not indicate to whom it was sent, or whether it was received. An "Amended Notice of Administrative Claim," dated October 27, bears an anonymous "re-

ceived" stamp of November 7, 2000. In a January 19, 2001 letter to plaintiff, the Justice Department acknowledged receipt of the amended claim on November 14, 2000. The letter advised plaintiff that the claim was being forwarded to the USDA. The court is not informed at to the current status of plaintiff's administrative claim.

render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

This jurisdiction extends only to claims for money damages and must be strictly construed. *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

■ While conferring jurisdiction, the Tucker Act does not create a substantive right enforceable against the United States for monetary damages. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *Testan,* 424 U.S. at 398, 96 S.Ct. 948. "Instead, to invoke jurisdiction under the Tucker Act, a plaintiff must identify a contractual relationship, constitutional provision, statute, or regulation that provides a substantive right to money damages." *Khan v. United States,* 201 F.3d 1375, 1377 (Fed.Cir.2000). Plaintiff's complaint fails to identify any such contractual relationship, constitutional provision, statute, or regulation that entitles him to "the return, replacement or compensatory damages" for "reprisal, discrimination, injury and damages to livestock, hogs, machinery, and equipment, and resulting loss of production." Compl. § 3, ¶ 4.

### 1) *Contract*

■ The complaint does not identify a contract with the Government that permits plaintiff to recover damages. Plaintiff's allegation that his claims are "Contractual," Compl. § 1, ¶ 1, is wholly insufficient to establish jurisdiction under the Tucker Act. If plaintiff intends to predicate Tucker Act jurisdiction on an express or implied contract with the Government, he must allege a specific contract with the Government.

Although records of the federal and state foreclosure proceedings submitted by defendant reveal several loan contracts between plaintiff and the Government, the court cannot infer that plaintiff intended them to form the basis of his claims. The court's duty to scour the complaint for "any possible basis on which the non-movant might prevail," *W.R. Cooper,* 843 F.2d at 1364, does not mean that the court must adjudicate every possible cause of action that plaintiff might have pleaded. The balance the court must strike is all the more delicate when the plaintiff proceeds *pro se.* Plaintiff nevertheless remains the master of his complaint, and the court will address only those claims that he actually presents. To do otherwise would place the court in the position of acting as plaintiff's advocate, on the one hand, while also risking judgment on the merits of claims that plaintiff did not intend to litigate, on the other.[7]

### 2) *Statute or regulation*

■ The complaint repeatedly refers to the "unlawful" conduct of the Government. The United States has consented to be sued in the Court of Federal Claims only on claims that it has violated a specific statute or regulation that requires the Government to pay money to the claimant. It is not enough that the Government has violated some law and in so doing inflicted injury for which a monetary award might make the claimant whole; the claimant must establish that the law violated obligates the Government to pay him money.

Specifically, the Court of Federal Claims does not have jurisdiction over suits against the Government for discrimination, whether

---

7. Were the court to read a breach of contract claim into the complaint, for example, it would then be compelled to dismiss the complaint for failure to state a claim, as plaintiff has also failed to identify any conduct on the part of the Government that amounts to a breach.

Insofar as the Government's foreclosure on plaintiff's property stemmed from the parties' earlier contracts, the Government did owe the plaintiff a duty of good faith and fair dealing. It is well-settled, however, that Government officials are presumed to act conscientiously and in good faith in the discharge of their duties. *Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 198–99, 543 F.2d 1298, 1301–02 (1976). In order to overcome this presumption, plaintiff must allege and prove, by clear and strong evidence, "some *specific intent to injure the plaintiff." Id.* at 198, 543 F.2d at 1302. Even if the complaint had alleged that a contract with the Government did exist, it alleges no facts that even begin to meet this standard.

stated as a violation of equal protection, due process, or otherwise. *Mullenberg v. United States*, 857 F.2d 770, 773 (Fed.Cir.1988). The court lacks jurisdiction over claims for fraud, *Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir.1997), nor does the court have jurisdiction over alleged violations of criminal statutes, *Campbell v. United States*, 229 Ct. Cl. 706, 707, 1981 WL 22109 (1981).

Plaintiff's complaint relies on a number of statutes and regulations, none of which mandates the payment of money. Paragraph 2 of section 1 of the complaint alleges that plaintiff "has complied with the provisions of 28 U.S.C. § 2672." Section 2672 is part of the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 2671–80 (1994 & Supp. V 1999). The FTCA authorizes certain suits against the United States for property damage, personal injury, and death caused by Government employees acting within the scope of their employment. FTCA claims can only be brought in the district courts, *id.* § 1346(b), and only after the claim has been presented to and denied by the appropriate Federal agency, *id.* § 2675. Section 2672 relates to the administrative adjudication of tort claims.

■ The Court of Federal Claims has no power to adjudicate torts, *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed.Cir.1993); *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 614, 372 F.2d 1002, 1013 (1967), whether brought under the FTCA or otherwise. The Tucker Act specifically excludes tort claims from the jurisdiction of the court, 28 U.S.C. § 1491(a)(1), and the FTCA vests exclusive jurisdiction over tort actions in the district courts, *id.* § 1346(b). Accordingly, the fact that plaintiff has presented an administrative tort claim to the USDA is irrelevant to his suit in this court.[8]

### 3) *U.S. Constitution*

■ The Court of Federal Claims lacks jurisdiction over suits against the Government for discrimination, whether stated as a violation of equal protection, due process, or otherwise. *Mullenberg*, 857 F.2d at 772–73. Plaintiff's focus on the loss of his land and equipment, however, implies an allegation that the Government has taken his private property for public use without just compensation, thereby violating the Fifth Amendment of the Constitution. The Takings Clause is a money-mandating provision of the Constitution for purposes of the Tucker Act. *Preseault v. ICC*, 494 U.S. 1, 11–12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990).[9]

---

**8.** Plaintiff's reference to section 2672 appears to be a recrudescence of a prior lawsuit in the District Court for the District of Nebraska. Plaintiff had sued the USDA under the FTCA for " 'Redress of Grievances and Punitive Damages' as a result of discriminatory actions, including acts of genocide." Mem. & Order on Def.'s Mot. To Dismiss, *Meints v. USDA*, No. 4:01CV–3025 (D.Neb. Apr. 19, 2001). The district court dismissed that lawsuit because plaintiff had failed to exhaust his administrative remedies as required by section 2675. The district court acknowledged that plaintiff had filed the administrative claim discussed *supra* note 6, but also noted that plaintiff had not received a final denial of that claim.

Plaintiff also states in paragraph 1 of section 3 of the complaint:

Notice of Administrative Claim for Damages was Executed by Standard Form 95 or other Written Notification of an Incident for a Sum Certain, as Prescribed by the Department of Justice and Sec. 14.1, Sec. 14.2, Sec. 14.3, Sec. 14.4, Sec. 14.5, Sec. 14.6, Sec. 14.7, Sec. 14.8, Sec. 14.9, Sec. 14.10 and by authority of title 5 USC, Sec. 301, Title 28 USC, Sec. 509, Sec. 510, Sec. 2672; Title 28 USC, Sec. 224(a) and

Source Order No. 371–66, 31 FR 16616, Dec. 29, 1966.

The court interprets this passage as a reference to 28 C.F.R. pt. 14 (2001), which contains the Justice Department's regulations governing administrative claims under the FTCA; to 5 U.S.C. § 301 (2000), which is the general statutory authorization for the promulgation of regulations by agency heads; to 28 U.S.C. § 509–10 (1994), delimiting the general functions and authority of the Attorney General; to 28 U.S.C. § 2672 (1994), discussed above; to 28 U.S.C. § 224(a), which was repealed prior to, or at the time of the enactment of Title 28 into law by Act of June 25, 1948, ch. 646, 62 Stat. 869; and to 31 Fed.Reg. 16,616 (Dec. 29, 1966), where 28 C.F.R. pt. 14 was published in the Federal Register.

**9.** Conversely, the Fifth Amendment's Due Process Clause, which provides that no person shall be deprived of property without due process of law, does not require the payment of money damages so as to permit jurisdiction in the Court of Federal Claims. *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987) (citing *Inupiat Cmty. of the Arctic Slope v. United States*, 230 Ct.Cl. 647, 662, 680 F.2d 122, 132 (1982)).

Plaintiff's use of the word "taking" and the context in which he uses it show that, in actuality, he does not intend to invoke the Takings Clause. For example, in his surreply to defendant's motion to dismiss, plaintiff states: "The United States Court of Federal Claims is the only court that has jurisdiction of the issue of unlawful taking of a person's property through discrimination, and without due process." Pl.'s Br. filed Oct. 16, 2001, at 1. As a general matter, then, the complaint alleges that the Government's actions were unlawful, fraudulent, and constitute theft. But a "plaintiff in a takings action cannot assert that the government conduct was unauthorized." *Del–Rio Drilling Programs v. United States*, 146 F.3d 1358, 1365 (Fed.Cir. 1998); *accord Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–03 (Fed.Cir.1993).

More specifically, the federal and state proceedings that appear to form the basis for plaintiff's claim cannot possibly constitute a taking: "[I]t is axiomatic that there is no taking where, pursuant to court order, the government is in possession of property to which it asserts a claim of rightful ownership." *DSI Corp. v. United States*, 228 Ct. Cl. 299, 303, 655 F.2d 1072, 1074 (1981). When the Government "takes" property in the constitutional sense, it exercises its right as sovereign to acquire property from the rightful owner for the public good. *DSI* held that the Government's prosecution of a lien claim before a court in an equal contest of ownership did not amount to a taking. By suing for foreclosure, the United States "did not exercise its sovereignty and expropriate private property from the rightful owner, . . . [but only] asserted . . . that it was entitled to be the rightful owner of the property as the only holder of a valid mortgage on the property." *Id.* at 302–03, 655 F.2d at 1074. Similarly, in the proceedings involving plaintiff's land and equipment in Nebraska, the Government has not exercised its sovereignty and expropriated private property from the rightful owner. As in *DSI*, the Government has asserted its own claim of right to the property—it "voluntarily submitt[ed] its claim to the scrutiny of the court and impliedly [agreed] to abide by the outcome of the trial." *Id.* at 303, 655 F.2d at 1075.

The court understands that plaintiff, who is not a lawyer, alleges that the Government has "taken" his property in the lay sense—not in the constitutional sense. This reading of the complaint is consistent with his allegations that the Government's alleged conduct is "unlawful" and "fraudulent." Because this allegation asserts no more than a general violation of the law, it does not present a claim over which the court has jurisdiction.

#### 4) *Equitable relief*

Finally, plaintiff alleges that his claim is for "the return, replacement or compensatory damages." *Id.* § 3, ¶ 4. By "return" and "replacement," plaintiff presumably refers to his "machinery and private property and equipment." *Id.* Jurisdiction under section 1491(a) of the Tucker Act, however, extends only to claims for money damages. *Testan,* 424 U.S. at 397–98, 96 S.Ct. 948. Injunctions—orders forcing a party to do or not do something—are a form of equitable relief. Save for certain narrowly defined circumstances not applicable here, *see* 28 U.S.C. §§ 1491(a)(2), (b)(2), the Court of Federal Claims has no power to grant equitable relief. *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1294 (Fed.Cir.1999); *James v. Caldera,* 159 F.3d 573, 580–81 (Fed.Cir.1998). Consequently, even if plaintiff properly alleged subject matter jurisdiction with regard to his claim for money damages, the court could not entertain his requests for the return or replacement of his property.

### CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted, and the Clerk of the Court shall dismiss plaintiff's complaint without prejudice for lack of jurisdiction.

**IT IS SO ORDERED.**

No costs.