Soila CORRALES,

v.

The UNITED STATES.

No. 00–312C.

United States Court of Federal Claims.

April 18, 2003.

Michael J. Kanz, Fresno, CA, for the plaintiff.

John N. Maher, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., for the defendant. James M. Kelly, Department of Agriculture, of counsel.

## OPINION

YOCK, Senior Judge.

This contract case is before the Court on the Defendant's Motion to Dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, the defendant's motion is granted, and the Complaint is to be dismissed.

### Background

In the latter half of 1985, the plaintiff and her husband agreed to purchase a single-family residence in the city of Mendota, California (the "Property"). The purchase price for the Property was $46,000. On November 1, 1985, the plaintiff and her husband executed a Real Estate Deed of Trust for California with Assignment of Rents (the "Deed of Trust").[1] By its terms, the Deed of Trust secured one or more promissory notes that the plaintiff and her husband executed in favor of the United States, acting through the Farmers Home Administration (the "Government"). The principal amount secured was $28,100.[2] The Deed of Trust identified the Property as the collateral that secured the promissory note(s). Both the Deed of Trust and the Grant Deed for the Property were recorded in the land records of Fresno County, California (the "County") on November 4, 1985.[3]

Beginning around the 1990–91 tax year, the plaintiff[4] became delinquent in the payment of real property taxes on the Property. The plaintiff eventually entered into an installment agreement with the County to pay the back taxes on the Property, but she failed to stay current with the installment payments. The County provided the plaintiff with a notice of installment plan default on or about May 6, 1997. The plaintiff did not make any installment payments toward back taxes or pay current real property taxes after May 6, 1997.

By letter dated January 14, 1998, the County informed the Farmers Home Administration that the Property would be offered for sale at public auction on March 2, 1998, for the purpose of satisfying unpaid taxes, penalties, and costs. The letter also informed the Farmers Home Administration that it could prevent the proposed tax sale by remitting the redemption amount of $4,371.48 to the County no later than February 27, 1998. On February 10, 1998, the County also

1. A deed of trust is a device by which lenders take a security interest in real property in certain jurisdictions. In a deed of trust, the borrower transfers legal title to real property to a trustee, who holds the title in trust for the benefit of the lender. The device is analogous to a mortgage. *See generally* GREGORY M. STEIN ET AL., A PRACTICAL GUIDE TO COMMERCIAL REAL ESTATE TRANSACTIONS § 6.26 (2001); RALPH E. BOYER ET AL., THE LAW OF PROPERTY § 18.2 (4th ed.1991).

2. The defendant's motion asserts, without support, that the Government loaned the plaintiff and her husband approximately $46,000, which would be the entire purchase price of the Property. Because neither party has provided copies of the actual promissory note(s), the Court assumes that the principal amount of $28,100 recited in the Deed of Trust is the correct loan amount. For purposes of this Opinion, however, the principal amount of the loan is immaterial.

3. To simplify the above description of the transaction, it appears that the plaintiff and her husband borrowed $28,100 from the Government in order to purchase the Property and, in order to secure repayment of the loan, the Government required the plaintiff and her husband to execute the Deed of Trust granting the Government a security interest in the Property.

4. The record does not indicate what happened to Mr. Corrales, but that information is immaterial for the purposes of this Opinion.

taped a Notice of Personal Contact for Sale of Tax–Defaulted Property to the front door of the Property. That notice informed the plaintiff that the Property would be sold at auction on March 2, 1998, unless the redemption amount of $4,516.47 was paid to the County no later than February 27, 1998.

The Government sent a letter dated February 25, 1998,[5] to the plaintiff's husband at the Property. The pertinent parts of that letter are reproduced below:

Dear Homeowner:

It has been brought to our attention by our tax service provider that as of 02/02/1998 your tax collector was reflecting delinquent taxes for your property. Per the terms of your mortgage agreement, you are responsible for timely payment of all real estate taxes and providing us proof of payment.

   \*     \*     \*     \*     \*     \*

If you have already paid the taxes, please follow-up with your tax collector to ensure that your payment has been applied correctly. Please forward either a paid tax receipt or a copy of the front and back of your canceled check as proof of payment with the coupon below within 30 days.

   \*     \*     \*     \*     \*     \*

If no response is received, it will result in the USDA—Centralized Servicing Center paying all outstanding taxes on the property. In addition, an escrow account will be established for the future payment of taxes, and your monthly payment will be adjusted accordingly.

(Compl.Ex. A.) Neither the Government nor the plaintiff paid the redemption amount by the final redemption date of February 27, 1998. Accordingly, the Property was sold for $28,500 at public auction on March 2, 1998. The plaintiff still resides at the Property as a tenant, paying rent to the new owner who purchased the Property at the tax sale.

On December 16, 1999, the plaintiff filed a complaint against the Government in the United States District Court for the Eastern District of California (the "District Court").

The District Court transferred the case to this Court on May 11, 2000, and the plaintiff filed her Complaint in this Court on January 25, 2002.

The Complaint recites three causes of action. First, the plaintiff alleges a claim in promissory estoppel ("Count I"), contending that her reliance on the defendant's "promise" in its February 25, 1998 letter to pay her delinquent taxes resulted in detriment to her-*i.e.*, loss of the Property at the tax sale. Second, the plaintiff alleges that the Deed of Trust set forth the Government's promise to pay the plaintiff's delinquent real property taxes and that the Government's failure to do so prior to the tax sale constituted a breach of contract ("Count II"). Finally, the plaintiff asserts a claim of negligent misrepresentation ("Count III"), contending that she lost the Property at the tax sale due to the Government's negligent misrepresentation that it would pay the plaintiff's delinquent real property taxes.

The defendant filed its Motion to Dismiss on November 15, 2002. The defendant contends that this Court does not have jurisdiction over Counts I and III and that Count II should be dismissed for failure to state a claim upon which relief can be granted. Oral argument was not requested and is deemed unnecessary.

*Discussion*

I. *Standard of Review*

The defendant has moved to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). In assessing the Defendant's Motion to Dismiss under both of the cited Rules, the Court accepts as true all well-pled allegations of fact asserted in the Complaint and views all reasonable inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The burden of proving that the Court has jurisdiction over the claims asserted in the Complaint, however, rests with the

---

**5.** Notably, the plaintiff has not alleged that she actually received this letter prior to the February

27, 1998, final redemption date.

plaintiff. Even if the plaintiff meets the jurisdictional burden, an RCFC 12(b)(6) motion may dispose of her claims if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## II. *Jurisdiction*

Like all Federal courts, the United States Court of Federal Claims is a court of limited jurisdiction. The Tucker Act, 28 U.S.C. § 1491, provides the basic governmental consent for suits to be brought against the Government in this Court. The statute provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2000). This statute does not create any substantive right enforceable against the United States for money damages; rather, it "merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Accordingly, in order to maintain a suit in this Court, a claimant must look beyond the Tucker Act and identify a contract or some constitutional provision, federal statute, or regulation which mandates the payment of money to the claimant. *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967).

### III. *The Defendant's RCFC 12(b)(1) Motion*

■ Count I of the Complaint asserts a claim under the theory of promissory estoppel. The doctrine of promissory estoppel

holds that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." RESTATEMENT (SECOND) OF CONTRACTS § 90 (1979). While this Court has jurisdiction over express and implied-in-fact contracts, it is well settled that the Tucker Act does not provide this Court with jurisdiction over promissory estoppel claims. *Hercules v. United States*, 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996); *United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Confidential Informant v. United States*, 46 Fed.Cl. 1, 3 n. 6 (2000); *LaMirage, Inc. v. United States*, 44 Fed.Cl. 192, 199 (1999), *aff'd*, 232 F.3d 912 (Fed.Cir.2000); *Sam Gray Enters. v. United States*, 43 Fed.Cl. 596, 605 (1999), *aff'd*, 250 F.3d 755 (Fed.Cir.2000); *Durant v. United States*, 16 Cl.Ct. 447, 450 (1988). Consequently, Count I of the Complaint must be dismissed for lack of jurisdiction pursuant to RCFC 12(b)(1).[6]

■ Turning briefly to Count III, alleging negligent misrepresentation, it is widely recognized that claims based on "negligent misrepresentation, wrongful inducement, or the careless performance of a duty allegedly owed, are claims sounding in tort." *Somali Dev. Bank v. United States*, 205 Ct.Cl. 741, 749, 508 F.2d 817, 821 (1974). The Tucker Act does not vest this Court with jurisdiction over tort claims. 28 U.S.C. § 1491(a); *McCormick v. United States*, 227 Ct.Cl. 661, 665, 1981 WL 21411 (1981). Accordingly, Count III of the Complaint, sounding in tort, also must be dismissed for lack of jurisdiction pursuant to RCFC 12(b)(1).[7]

Count II of the Complaint claims damages arising out of the Government's alleged breach of the Deed of Trust. The Count asserts a claim founded upon an express contract with the Government and thus falls within this Court's Tucker Act jurisdiction. 28 U.S.C. § 1491(a). The only pertinent

---

6. The plaintiff does not oppose dismissal of Count I based upon lack of subject matter jurisdiction. (Pl.'s Opp. to Def.'s Mot. to Dismiss at 1.)

7. The plaintiff does not oppose dismissal of Count III based upon lack of subject matter jurisdiction. *Id.*

question for purposes of the defendant's Motion to Dismiss, then, is whether or not Count II states a claim upon which relief may be granted.

## IV. *The Defendant's RCFC 12(b)(6) Motion*

The defendant's RCFC 12(b)(6) motion will be granted if "the facts asserted by the plaintiff do not entitle [her] to a legal remedy." *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir.2000). For purposes of ruling on the defendant's motion, the Court must accept as true all of the plaintiff's well-pled allegations of fact. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. The Court need not accept as true the plaintiff's asserted interpretation of provisions of the Deed of Trust, however, because contract interpretation is a question of law, not of fact. *See Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 997 (Fed.Cir. 1996) (asserting that "interpretation of a contract provision is a question of law").

### A. *The Plain Language of the Deed of Trust*

■ The pertinent provisions of the Deed of Trust are reprinted below:

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and being further described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest |
|---|---|---|
| 11–1–85 | $28,100.00 | 10.625% |

\* \* \* \* \* \*

NOW, THEREFORE, in consideration of the loan(s) Borrower grants to Trustee with power of sale the following described property at 306 "L" Street in Fresno County(ies), of California \* \* \*;

IN TRUST, NEVERTHELESS, (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, \* \* \* and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, the provisions of which are hereby incorporated herein and made a part hereof.

BORROWER WARRANTS the property and the title thereto unto Trustee for the benefit of the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnity and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

\* \* \* \* \* \*

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the property.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

\* \* \* \* \* \*

(7) To pay when due all taxes, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges, and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

\* \* \* \* \* \*

(14) The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) request reconveyance of portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government-whether once or often-in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

\* \* \* \* \* \*

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be declared a bankrupt or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take posses-sion of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) without a prior hearing authorize and request Trustee to foreclose this instrument and sell the property as provided by law and (e) bring an action to foreclose this instrument, obtain a deficiency judgment, or enforce any other remedy provided by law.

(Compl.Ex. D.) The language of the Deed of Trust is unambiguous: in consideration of the $28,100 loan made by the Government, the plaintiff granted the Government a security interest in the Property and made a series of covenants and agreements. The covenants and agreements are patently for the benefit of the Government, serving to protect its interests in the Property until all amounts owing to the Government have been paid in full.

The plaintiff interprets the covenants and agreements in the Deed of Trust as an obligation by the Government "to pay the defaulted property taxes owed by Plaintiff to the county of Fresno." (Compl.¶ 31.) That conclusory assertion, however, sorely misinterprets the covenants and agreements in the Deed of Trust. Those covenants and agreements plainly serve as a shield to protect the Government's interests, not as a sword by which a defaulting borrower may impose liability for its own tax delinquencies on the lender.

In consideration of the loan made by the Government, the plaintiff expressly promised "[t]o pay when due all taxes, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property." (Compl. Ex. D ¶ 7.) In the event that the plaintiff defaulted in the performance of that obligation, the plaintiff agreed that the Government, at its option, could "for the account of Borrower incur and pay reasonable expenses for repair or maintenance of \* \* \* the property." Id. ¶ 17. The plaintiff also agreed that "the Government may at any time pay any other amounts \* \* \* required herein to be paid by Borrower and not paid

by Borrower when due * * * as advances for Borrower's account," *id.* ¶ 4, and that "such advances shall bear interest at the rate borne by the note which has the highest interest rate." *Id.* These provisions of the Deed of Trust permitted, but did not require, the Government to take action to protect its interests in the Property if the plaintiff failed to perform its contractual obligations.

As the cited provisions of the Deed of Trust clearly articulate, the plaintiff promised to pay real property taxes on thè Property when due. The Government had a right, but no obligation, to pay the plaintiff's real property taxes if the plaintiff failed to pay such taxes when due. The plaintiff cannot assert a set of facts that would change the import of the plain language of the Deed of Trust. Because the Deed of Trust did not impose upon the Government a contractual obligation to pay the plaintiff's delinquent real property taxes, the plaintiff's allegation that the loss of her house at a tax sale was due to the Government's breach of such nonexistent obligation fails to state a claim upon which relief can be granted.

### B. *The Legal Effect of the Government's February 28, 1998 Letter*

In Plaintiff's Opposition to Defendant's Motion to Dismiss, the plaintiff concedes that the Deed of Trust by itself does not contain an explicit promise by the Government to pay the real property taxes on the Property. (Pl.'s Opp. to Def.'s Mot. to Dismiss at 7.) The plaintiff then theorizes, however, that the Government's letter dated February 25, 1998, "when viewed in light of the entire agreement between the parties should be considered a promise that was mutually agreed to in the original agreement." *Id.* at 7–8. The plaintiff offers no legal support for its novel "retroactive promise" theory, and the Court rejects it for the reasons stated below.

The letter relied upon by the plaintiff requested that the plaintiff forward to the Government, within thirty days, proof of payment of the delinquent property taxes. The letter also stated that "[i]f no response is received, it will result in the USDA—Centralized Servicing Center paying all outstand-

ing taxes on the property. In addition, an escrow account will be established for the future payment of taxes, and your monthly payment will be adjusted accordingly." (Compl.Ex. A.) The plaintiff argues that this letter constituted a promise by the Government to pay the plaintiff's delinquent property taxes, which promise was supported by the same consideration that supported the Deed of Trust that was executed more than twelve years earlier.

The letter relied upon by the plaintiff is not atypical of a "demand" letter that lenders send to borrowers when borrowers are in default under the terms of their loan documents, and for that reason it shall hereinafter be called the "Demand Letter." The Demand Letter informed the plaintiff of action that the defendant intended to take if the plaintiff failed to respond to the letter. The Government's failure to carry through with the specified remedy, however, does not give rise to a cause of action under the Deed of Trust, because the Deed of Trust specifically permits the Government to forbear from exercising any or all of its remedies at any time. (Compl. Ex. D ¶ 14.)

The Demand Letter coupled with the Deed of Trust could serve as a basis for the plaintiff's claim if the Demand Letter constituted a modification to the original Deed of Trust. A modification agreement, however, must meet the same prerequisites of any other contract; namely, "a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." *Total Med. Mgmt., Inc. v. United States,* 104 F.3d 1314, 1319 (Fed. Cir.1997). Even if the Demand Letter could be construed as an offer to modify the Deed of Trust, it is undisputed that the plaintiff never responded to such offer, and thus the offer was not timely accepted.

Moreover, no consideration supports a modification of the Deed of Trust. "It is well settled that 'where the provisions of a contract are changed by a subsequent agreement between the same parties, such agreement has no force and effect unless there is some consideration moving to the party ad-

versely affected by such changes.'" *Montefiore Hosp. Ass'n of W. Pennsylvania v. United States,* 5 Cl.Ct. 471, 476 (1984) (quoting *Vulcanite Portland Cement Co. v. United States,* 74 Ct.Cl. 692, 705, 1931 WL 2351 (1931)). If the Demand Letter were to be construed as a modification agreement, the party adversely affected by the changes therein would be the Government, which would be undertaking an obligation (*i.e.,* payment of delinquent real property taxes) that it was not obligated to undertake in the original Deed of Trust. No consideration moved to the Government to support such additional undertaking.

The plaintiff argues that the original Deed of Trust language, providing that the plaintiff would pay interest "at the rate borne by the note which has the highest interest rate" on any advances made by the Government on plaintiff's behalf, constitutes consideration for the Government's purported later "promise" to pay her delinquent real property taxes. That certainly is not the case. The plaintiff already had agreed in the original Deed of Trust, as part of the original consideration for the $28,100 loan from the Government, to pay interest "at the rate borne by the note which has the highest interest rate" on any advances that the Government made on her behalf. Consequently, at the time the Government sent the Demand Letter, the plaintiff had a pre-existing legal duty to pay interest on any advances "at the rate borne by the note which has the highest interest rate." That pre-existing obligation does not serve as the additional consideration required to support a purported modification to the Deed of Trust. *See* RESTATEMENT (SECOND) OF CONTRACTS § 73 (1979) (stating the general rule that "[p]erformance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration * * *.").

Finally, even if by some novel theory the plaintiff convinced the Court that the Government's Demand Letter constituted a binding promise for the benefit of the defaulting plaintiff, the Court would not find that the Government committed a breach that proximately caused the loss of which the plaintiff complains. The Demand Letter did not re-

cite a promise to pay the plaintiff's delinquent taxes in time to prevent the sale of the Property at tax auction. By its terms, the Demand Letter gave the plaintiff thirty days to submit evidence that she paid the delinquent taxes. Failure to so respond would result in the Government "paying all outstanding taxes on the property." (Compl.Ex. A.) The Demand letter was dated February 25, 1998; therefore, even if the Demand Letter could somehow be construed as a promise to pay delinquent taxes for which consideration was given, the Government's obligation to pay the taxes would not have accrued until the plaintiff's thirty-day "cure" period had expired, or no earlier than March 27, 1998. The tax auction of the Property occurred on March 2, 1998, weeks before the plaintiff's "cure" period expired. Plainly, the loss of the Property at the tax sale was not a result of the Government's breach of a purported promise to pay delinquent taxes after March 27, 1998, but rather a consequence of the plaintiff's failure to fulfill the absolute promise made by her in the Deed of Trust to pay all taxes on the Property as they became due.

In summary, Count II fails to state a claim upon which relief can be granted. There is no express promise by the Government within the four corners of the Deed of Trust to pay the plaintiff's delinquent real property taxes. The Demand Letter standing alone does not serve as an agreement between the Government and the plaintiff, because the plaintiff neither expressed an acceptance of its terms nor gave consideration for the Government's purported undertaking therein. The Demand Letter does not serve as a modification to the Deed of Trust because of the same infirmities of lack of consideration and lack of acceptance. Finally, even if the Demand Letter were construed as a binding promise, the Demand Letter by its terms did not promise to pay the plaintiff's delinquent real property taxes in time to prevent a tax sale of the Property. Accordingly, based on the plain language of the documents relied upon by the plaintiff, the plaintiff has not, and cannot, allege a set of facts that would entitle her to the relief she requests. It is appropriate to grant a motion to dismiss for failure to state a claim upon which relief can

be granted when, as here, "the facts asserted by the plaintiff do not entitle [her] to a legal remedy." *Boyle,* 200 F.3d at 1372.

## CONCLUSION

Count I and Count III of the Complaint are to be dismissed for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Count II of the Complaint is to be dismissed for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). The Clerk of the Court is hereby directed to enter judgment accordingly and to dismiss the Complaint.

Each party is to bear its own costs.