ACADIA TECHNOLOGY, INC., and
Global Win Technology, Ltd.,
Plaintiffs,

v.

The UNITED STATES of
America, Defendant.

No. 04–1560C.

United States Court of Federal Claims.

May 11, 2005.

426

Mattaniah Eytan, Corte Madera, California, for plaintiff.

Marla T. Conneely, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

## ORDER AND OPINION

HODGES, Judge.

The United States Customs Service [1] seized three shipments of plaintiffs' cooler fans during the period October 1997 through February 1998. Cooler fans are used to protect the central processing units in computers. The seizures were based on complaints from Underwriters Laboratories that the fans contained counterfeit certification marks, a violation of domestic trademark and copyright law. The fans had a value of approximately $125,000.

A certification mark implies that goods have been tested and have met certain standards of safety in a given field. The Lanham Act defines a certification mark as "any word, name, symbol, or device ... [used] to certify ... quality, accuracy, or other characteristics of ... goods or services ...." 15 U.S.C. § 1127. The "UL" mark belonging to Underwriters Laboratories is typical of certification marks used in commerce.

Plaintiffs sought a forfeiture hearing in April 1988, but the Government did not begin formal proceedings until 2002. The Department of Justice agreed to release the seized goods in October 2003. The district court entered a stipulation of dismissal on October 15, 2003 by agreement of the parties, each to bear its own costs. Plaintiffs sued in this court for an "unjust taking" based on the depreciated value of the fans while in government custody. They allege that the fans became obsolete, retaining salvage or scrap value of approximately $41,000 when released. Defendant filed motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted. Plaintiffs raised illegal exaction

1. The Customs Service is now a law enforcement agency within the Department of Homeland Security, known as United States Customs and Border Protection. This is an agency of the Department of Homeland Security, comprising the United States Customs Service, the United States Immigration and Naturalization Service, the Animal and Plant Health Inspection Service, and the United States Border Patrol.

as an alternative theory of recovery in their Response.

Plaintiffs bear the burden of establishing that this court has jurisdiction to hear their claims. *See, e.g., Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991) (holding that " '[a] party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists.' "). We grant defendant's motions.

## DISCUSSION

### A. Applicable Law

Plaintiffs argued initially that "defendant misinterpreted applicable law, resulting in a seizure that was void *ab initio.*" Pl.'s Opp'n to Def.'s Mot. to Dismiss Pl.'s Compl., at 1. Moreover, "[the Customs Service] *never* had the power to seize the property at issue here." They acknowledged later that the seizure was not *ultra vires* because the Customs Service acted under color of law.

### 1. Forfeiture Statutes

The statutes that address plaintiffs' legal issues are 19 U.S.C. § 1526(e), authorizing seizure of certain goods containing counterfeit marks; 15 U.S.C. § 1124, prohibiting the use of counterfeit marks "to induce the public to believe that [an] article is manufactured in the United States ...."; and 15 U.S.C. § 1127, which defines the term "certification mark." Title 19 U.S.C. § 1526(e) authorizes seizure of goods in appropriate circumstances:

> Any [foreign] merchandise bearing a counterfeit mark (within the meaning of section 1127 of Title 15) imported into the United States in violation of the provisions of section 1124 of Title 15, shall be seized and, in the absence of the written consent of the trademark owner, forfeited for violations of the customs laws.

19 U.S.C. § 1526(e). This section provides that the Government "shall" seize merchandise if it: (1) is of foreign manufacture; (2) bears a counterfeit mark within the meaning of 15 U.S.C. § 1127; and (3) was imported in violation of 15 U.S.C. § 1124. Section 1526(e) employs both the general term "mark" and the more specific term "trademark." Its incorporation of 15 U.S.C. § 1127

by reference brings the term "certification mark" into the coverage of 1526(e). That term is defined as

> any word, name, symbol, or device, or any combination thereof—
>
> (1) used ... (2) ... to certify regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of such person's goods or services or that the work or labor on the goods or services was performed by members of a union or other organization.

15 U.S.C. § 1127. Section 1526(e) also incorporates 15 U.S.C. § 1124, which applies the seizure statute to goods that have been imported into the United States with counterfeit marks intended to mislead the public:

> [N]o article of imported merchandise which shall copy or simulate ... a trademark registered in accordance with the provisions of this chapter or shall bear a name or mark calculated to induce the public to believe that the article is manufactured in the United States, or that it is manufactured in any foreign country or locality other than the country or locality in which it is in fact manufactured ... shall be admitted to entry at any customhouse of the United States ....

Title 15 U.S.C. § 1124.

### 2. Interpretation

Plaintiffs argue that the three statutes taken together limit the seizure authority of 19 U.S.C. § 1526(e) to counterfeit *trademarks.* The general term "mark," which includes certification marks by definition, applies only where importers attempt to simulate goods that are manufactured in the United States, they argue. *See* 15 U.S.C. § 1124. Plaintiffs' interpretation may be a reasonable one. The statute refers to "marks" in addressing potential confusion about the country of origin. *See* 15 U.S.C. § 1124.

A California district court discussed a possible ambiguity in the interpretation of section 1526(e). *See United States v. 10,510 Packaged Computer Towers,* 152 F.Supp.2d 1189, 1196 (N.D.Cal.2001). The court resolved the matter by citing Customs Service Rulings that have "consistently interpreted

the statute to authorize seizure and forfeiture of goods bearing counterfeit certification marks." *Id.* (citing 33 Cust. B. & Dec. October 27, 1999, T.D. 99–76, 1999 WL 1020826). The court emphasized Congress' evident concern regarding the risks posed by counterfeit marks:

> Given Congress' concern about the health and safety threat posed by counterfeit merchandise to American consumers, it makes abundant sense to interpret the statute to prohibit the importation of merchandise bearing counterfeit certification marks. ... [O]ne of the policies underlying subsection 1526(e)—protection of American consumers from health and safety threats—will be substantially advanced by interpreting the statute to cover certification marks.

*Id.* at 1197.

We agree that the seizure and forfeiture statutes should be interpreted broadly. Title 15 U.S.C. § 1054 states that certification marks may be registered in the same manner as trademarks. They "shall be registrable under this chapter, in the same manner and with the same effect as are trademarks ... and when registered they shall be entitled to the protection provided in this chapter in the case of trademarks ...." *Id.* Section 1054 directs that "[a]pplications and procedure under this section shall conform as nearly as practicable to those prescribed for the registration of trademarks." *Id.* Thus, Congress intended that certification marks have the same effect and the same protection as trademarks.

The Lanham Act defines the term mark to "include[ ] any trademark, service mark, collective mark, *or certification mark.*" 15 U.S.C. § 1127 (emphasis added). "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a *registered mark.*" *Id.* (emphasis added). The Act describes its intent as "regulat[ing] commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce [and] protect[ing] registered marks used in such commerce from interference ...." *Id.*

Congress passed the Anticounterfeiting Consumer Protection Act of 1996 to strengthen trademark and certification mark protections. A California district court described the consumer protection aspects of that law in *Computer Towers,* 152 F.Supp.2d at 1197. Congress' findings included concerns about organized crime and other matters as well:

> The counterfeiting of trademarked and copyrighted merchandise—
>
> (1) has been connected with organized crime;
>
> (2) deprives legitimate trademark and copyright owners of substantial revenues and consumer goodwill;
>
> (3) poses health and safety threats to United States consumers;
>
> (4) eliminates United States jobs; and
>
> (5) is a multibillion-dollar drain on the United States economy.

Anticounterfeiting Consumer Protection Act of 1996, Pub.L. No. 104–153. *See* 18 U.S.C. § 2311.

Congress intended a broad interpretation of these statutes for the protection of the public and for other reasons outlined in the findings. If the use of "mark" and "trademark" in section 1526(e) creates an ambiguity, this would permit reference to the implementing agency's interpretation. The Customs Service ruled that "imported goods bearing a *counterfeit* mark ... which includes trademark, service mark, collective mark, *and certification mark* shall be seized and forfeited ...." 33 Cust. B. & Dec. October 27, 1999, T.D. 99–76, 1999 WL 1020826 (emphasis added).

### B. Illegal Exaction

A claim for illegal exaction may arise when "a 'plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Bowman v. United States,* 35 Fed.Cl. 397, 400 (1996) (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967)). Such claims may occur where the Government seizes goods without proper due process, or contrary to statute. Plaintiffs'

goods contained counterfeit certifications of quality. The seizure was conducted under the supervision of a federal court. The Government returned the goods intact, pursuant to a settlement between the parties.

Plaintiffs contend that the Government "abruptly dismissed" the case because it "became apparent that the forfeiture lacked merit." We cannot tell from plaintiffs' arguments or their Complaint that defendant agreed to settle because its case lacked merit. The Complaint does not contain allegations about settlement discussions or the parties' reasons for agreeing to settle. The parties filed a joint stipulation of dismissal in district court. *United States v. Approximately 20,923 Computer CPU Cooler Fans,* No. 02–4853 TEH (N.D.Cal. October 15, 2003).[2] Each agreed to pay its own costs and fees.

### C. Fifth Amendment Taking

■ Plaintiffs argued in their opening brief that the Government's seizure of their goods was unauthorized and void *ab initio*. A taking must be a legal and authorized act for a public purpose. Plaintiffs concede in their Response that Customs had the authority to seize items entering the United States, but they note that all such seizures are not necessarily lawful. They argue that a seizure that is not covered by applicable provisions of the forfeiture law would be unlawful, though authorized. The Federal Circuit has addressed the distinctions among unlawful, unauthorized, and *ultra vires* acts by government agents:

> [T]he courts have drawn an important distinction between conduct that is "unauthorized" and conduct that is authorized but nonetheless unlawful. Merely because a

---

**2.** The Stipulation of Dismissal states:

> The parties agree, subject to the Court's approval, that (1) the instant case be dismissed; (2) each party will bear its own costs and fees, including any storage costs for defendant merchandise which the government will pay up to the entry of the dismissal and for a reasonable period thereafter not to exceed 30 days; and (3) claimants agree to make arrangements to pick up the defendant merchandise within a reasonable time, not to exceed 30 days, from the date the Court enters dismissal, and to pay any storage costs after that 30 day period. . . .

government agent's conduct is unlawful does not mean that it is unauthorized; a government official may act within his authority even if his conduct is later determined to have been contrary to law.

*Del–Rio Drilling Programs v. United States,* 146 F.3d 1358, 1362 (Fed.Cir.1998). Plaintiffs explain that the Customs Service acted under the color of law;[3] the seizure was not *ultra vires*.

### 1. Police Power

■ Property taken for public *use* may result in a taking, but if it is taken to prevent public *harm*, the government action may be an exercise of police power. "The reason that [police actions] do not amount to a taking is because items properly seized by the government under its police power are not seized for 'public use' within the meaning of the Fifth Amendment." *Seay v. United States,* 61 Fed.Cl. 32, 35 (2004).

Plaintiffs argue that defendant was not exercising its police power in seizing the fans, but "exercising its own right to take products for a perceived public benefit." Pl.'s Opp'n to Def.'s Mot. to Dismiss Pl.'s Compl., at 9. Plaintiffs do not discuss their view of defendant's perception of a public benefit, but the seizure of plaintiffs' fans did not benefit the Government. The Customs Service did not sell the fans, but stored them for years; it could not have obtained a monetary benefit. Plaintiffs did not argue that the Government obtained another benefit. Any benefit to the public was not for a public "use," but as a means of preventing public harm, an exercise of police power.

---

IT IS SO ORDERED THAT THE INSTANT CASE BE, AND HEREBY IS, DISMISSED PURSUANT TO THE TERMS OF THE PARTIES' FOREGOING STIPULATION ON THIS 14TH DAY OF OCTOBER, 2003.
*United States v. Approximately 20,923 Computer CPU Cooler Fans,* No. 02–4853 TEH (N.D.Cal. October 15, 2003).

**3.** Plaintiffs' Complaint includes the following allegation: "The United States' refusal to act quickly regarding the goods, when it knew or should have known . . . that the seizure was *neither legal nor colorable*, constituted an unjust taking . . . ." Pl's. Compl. ¶ 21 (emphasis added).

### 2. Depreciated Value

Plaintiffs argue that the governmental action began as an exercise of police power, then turned into a taking by passage of time. They contend that defendant may have been "driven by its police powers" at the beginning, but that its "subsequent decision to hold [the] property, despite actual knowledge that this would have a severe economic impact on the plaintiffs, create[d] precisely the situation in which 'justice and fairness' require that ... [it be] deemed a compensable taking." Pl.'s Opp'n to Def.'s Mot. to Dismiss Pl.'s Compl., at 10. They cite excerpts of *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) for support. *Ruckelshaus* is a regulatory takings case that does not support plaintiffs' argument that they are entitled to damages measured by depreciation of their goods.

Cases addressing depreciation of claimant's goods during seizure by the Government are more instructive. *See, e.g., United States v. One (1) 1979 Cadillac Coupe De Ville*, 833 F.2d 994, 1000 (Fed.Cir.1987). Plaintiffs cite *One Cadillac* for the proposition that depreciation of property held by the Government may be recovered when the original seizure was unconstitutional. That case did not involve an unconstitutional seizure, however, and plaintiffs have not alleged that this one does either. Moreover, *One Cadillac* held that plaintiff was *not* entitled to depreciation for the value of the vehicle. *See Id.* (holding "[t]he fact that the jury ultimately found that the vehicle had not been used to facilitate a narcotics transaction did not make the government seizure and possession ... any less proper, or convert the seizure into a taking.").

The court in *Seay v. United States* found no taking even though the Government not only held plaintiff's property for an extended period but also damaged it. *Seay*, 61 Fed.Cl. at 35 (holding that damage to plaintiff's property while in government custody did not convert an otherwise proper seizure into a taking) (citing *One Cadillac*, 833 F.2d at 994). Defendant's holding of seized goods, even for an excessive length of time, is not a taking so long as the seizure was proper. *Id.*

Title 28 U.S.C. § 2465(a)(1) requires that the Government return a claimant's goods if he prevails in a forfeiture proceeding. The statute authorizes costs and attorneys fees if the seizure was improper, but makes no provision for the possibility that property would depreciate. *Id.* Congress must have been aware that property would be held for long periods of time in some cases, yet the statute provides no remedy other than return of the property unless authorities did not have probable cause to seize the property. 28 U.S.C. § 2465(b)(1)(a).

## CONCLUSION

The Government's seizure of merchandise bearing counterfeit certification marks was neither unauthorized nor void *ab initio*. Counterfeit certification marks are covered by the seizure authority of 19 U.S.C. § 1526(e). Congress contemplated the specific type of seizure in this case in passing the Lanham Act and related legislation.

 The facts of this case do not permit a finding of illegal exaction because defendant did not retain plaintiffs' goods and because it derived no benefits from their seizure. Plaintiffs have not shown that defendant's actions were illegal. This was not a Fifth Amendment taking because the goods were not taken for public use but to prevent public harm. The Government acted pursuant to its police power. The parties agreed to pay their own costs of litigation and to petition the district court for dismissal of the case, apparently as the result of a settlement.

Defendant's motion to dismiss for failure to state a claim is GRANTED. The Clerk of Court will dismiss plaintiffs' complaint. No costs.